## ELIAS CARTER v. AMOS HILL.

*Husband and wife—Adultery—Evidence—Conduct of counsel.*

1. In a suit by a husband to recover damages for the alienation of his wife's affections, for criminal intercourse with her, and for enticing her away from home, it is error to allow the plaintiff to testify to a conversation had with his wife, before their marriage, in the absence of the defendant.

2. The clear purpose of How. Stat. § 7546, prohibiting a husband and wife from testifying in any action or proceeding instituted by either in consequence of adultery, is to preserve with sacredness the confidences of the marriage state, and to render it impossible for either husband or wife to speculate upon the other's dishonor, relying upon their own testimony to make or support a case.

3. Counsel are expected to maintain a high standard of courtesy and fairness on the trial of causes, and an intentional disregard of the well-understood and generally accepted rules of professional propriety may in a proper case be good ground of reversal.

Error to Clinton. (Moore, J., presiding.) Argued May 14, 1890. Decided June 6, 1890.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Norton & Brunson* and *Spaulding & Walbridge,* for appellant, contended as stated in the opinion.

*Fedewa & Lyon,* for plaintiff, contended:

1. The only objection made to the testimony of plaintiff to the conversation had with his wife before marriage was that it was incompetent. There certainly could be no better evidence of what Mrs. Carter said about staying at defendant's after her marriage to plaintiff than that of one who heard her say it. The testimony was clearly competent, and was properly received; citing 1 Greenl. Ev. § 2; *Duflo v. Juif,* 63 Mich. 513; and no other objection can be raised in this Court; citing *Howry v. Eppinger,* 34 Mich. 29; *Campbell v. People,* Id. 351; *Brown v. Weightman,* 62 Id. 557.

2. Remarks of counsel in argument to the jury cannot be complained of on error unless the attention of the court was called to them, and its rulings excepted to; citing *Maclean v. Scripps,* 52 Mich. 214; *Manfg. Co. v. Car Co.,* 65 Id. 564; *Bedford v. Penney,* Id. 667.

CAHILL, J. The plaintiff brought an action to recover damages from the defendant for the alienation of his wife's affections, for criminal intercourse with her, and for enticing her away from home. He recovered a judgment for $800, from which defendant appeals.

Upon the trial the plaintiff was called as a witness on his own behalf, and testified to important facts affecting the main charge against the defendant,—that of adultery with plaintiff's wife. Among other things, he was allowed

to testify, against objection, to a conversation had, a short time before his marriage, between himself and the woman whom he afterwards married, in the absence of the defendant, in which she said she would not marry the plaintiff unless he would consent that she should remain at defendant's house while his wife went to Lansing to be doctored; that she told him that defendant wanted her to stay; and that she did stay there two months, after their marriage.

This testimony was objected to as hearsay, and it was certainly open to that criticism. The purpose of plaintiff's counsel in offering it is well illustrated by the remarks of one of them, made on the trial, in support of his offer to show by plaintiff that 'he had been engaged to the woman he finally married about a year and a half before his marriage; that his engagement had been broken off, and subsequently renewed, at the request of the woman, a few weeks before the marriage. We extract the following from a somewhat lengthy discussion appearing in the record:

" *Mr. Blanchard.* Now, your honor, you see the force and point I am getting at. Why was this proposition coming from her to him? After they had once been engaged,—the engagement broken off for a year and a half,—she again writes to him to come down and see her, and they would renew the engagement. That is where I claim it is relevant. And take the fact: Here is a lady living at Mr. Hill's. She contracts an alliance of matrimony with this man some two years ago, or a year and a half, breaks it off, and all at once, on her own motion, she proposes to him to come and get married, 'but I must stay here with Mr. Hill two months. Then I will go with you.' Well, he gets married in April; goes to his farm. In October they move from that farm, and during this time a child was born. It is a fair line of inference for the jury to draw, who is the father of that child?"

An examination of the record shows that the case for

the plaintiff, aside from his own testimony, was weak. It consisted almost solely of the testimony of one Treadwell, a man who claims to have looked through a window of the plaintiff's house one afternoon in August, 1884, "just before dusk," and to have seen a man and woman lying in a compromising position on a lounge in an inner room adjoining the one where the window was; that the man's back was towards him, so that he could not see his face; that the woman was Mrs. Carter; that he had seen Mrs. Carter come up to her house, in a carriage, with a man who was a stranger to witness, a few minutes before; that they hitched the team and entered the house, and shortly after he looked in the window; that, after seeing what he had testified to, he retreated into a corn-field near by, and saw Mrs. Carter come out of the house and go to the well; that the man soon came out, and stood talking with her. Just then Mr. Carter came up with a milk-pail in his hand, and entered the house. Witness testified that he did not at that time know Mr. Hill; that he had never seen him before; that about two months afterwards he saw the same man in DeWitt, and on inquiry found that it was Mr. Hill. The witness says he never told any one of what he had seen until in the spring of 1888, nearly four years afterwards. The witness says he kept the matter to himself, for fear of getting into trouble; but he fails to satisfactorily explain how he expected to avoid trouble by keeping his story four years, and then telling it when it was old, and the chances of corroborating it were materially lessened.

The story told by this witness may be true. It is not within our province to question it. We refer to it only for the purpose of showing that the testimony of the plaintiff himself may have been an important factor in determining the result of the trial. It was error to allow the plaintiff to testify to his conversation with his

wife in the absence of the defendant. Especially is this true as the plaintiff was not a competent witness for any purpose when the question of his wife's adultery was involved.

As the judgment must be reversed, and a new trial ordered, we deem it proper to call attention to an important error committed on the trial which appears to have been overlooked by counsel on both sides. We refer to the competency of the plaintiff as a witness, in this case, in his own behalf. How. Stat. § 7546, as amended in 1885 (Laws of 1885, p. 288), provides as follows:

"A husband shall not be examined as a witness for or against his wife without her consent;  *  *  *  nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage; but in any action or proceeding instituted by the husband or wife in consequence of adultery, the husband and wife shall not be competent to testify."

This statute was intended to subserve a wise public policy; and we think we ought to call attention to the flagrant violation of it in this case, even though no point be made upon it by counsel. We can only suppose that it must have been inadvertently overlooked in the court below. The clear purpose of the statute is to preserve with sacredness the confidences of the marriage state, and to render it impossible for either husband or wife to speculate upon the other's dishonor, relying upon their own testimony to make or support a case. The purpose of the statute is salutary, and it is the duty of the courts to see that it is not disregarded. 1 Greenl. Ev. § 334, note; *Maynard v. Vinton*, 59 Mich. 151.

We should not feel at liberty to reverse the case on this ground without calling counsel's attention more especially to it, and hearing argument; but, as the case

must be reversed on other grounds, we have called attention to it as affecting a new trial.

We have examined the other assignments of error, most of which relate to the conduct of one of the counsel for plaintiff, Mr. Blanchard, in the examination of witnesses,. and in the argument of the case to the court and jury. We are not prepared to say that the complaints made are entirely without foundation; but, as counsel are not likely to repeat the errors on another trial, we venture only the remark that it is expected of counsel that they will maintain a high standard of courtesy and fairness on the trial of causes, and that an intentional disregard of the well-understood and generally accepted rules of professional propriety might in a proper case be good ground of reversal.

For the error pointed out, the judgment is reversed, and a new trial granted.

The other Justices concurred.