### BARNES v. TIBBITTS.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—EVIDENCE—ADULTERY.

In an action for the alienation of the affections of plaintiff's wife, testimony of the husband relating to the presence of defendant at his home late at night with the wife, and their conversation together, and the testimony of other witnesses as to similar acts, was erroneously excluded, since adultery would not be necessarily inferable from the facts.

2. SAME—PLEADING—GENERAL ISSUE.

Evidence was admissible on behalf of defendant to show plaintiff's prior treatment of his wife, and the state of her affections towards the husband, although no special notice was pleaded with the general issue alleging that her affections had been previously withdrawn from her husband.

3. SAME—SUBSEQUENT QUARRELS—EVIDENCE.

And it was error to permit the introduction of evidence, on cross-examination of plaintiff, to show that his wife abandoned him after a quarrel over a request of plaintiff, to their daughter, to quit work and to go to school; as it was not an unreasonable request on plaintiff's part, and not sufficient cause for her leaving, and occurred after the affections of the wife had been alienated.

4. SAME—EVIDENCE.

It was error to strike out plaintiff's testimony, as a conclusion, that there was a change in the wife's feelings towards him about seven years previously, and she always acted more sociable towards defendant than towards plaintiff.

5. SAME.

Evidence of a quarrel between plaintiff and his wife nearly 30 years before was too remote, in view of the policy of the law to encourage the settlement of marital disputes, and upon the uncontradicted evidence that plaintiff and his wife had adjusted that grievance and lived together.

Error to Lapeer; Smith, J. Submitted November 14, 1910. (Docket No. 15.) Decided December 30, 1910.

Case by John F. Barnes against Chauncey Tibbitts for the alienation of the affections of plaintiff's wife. Judgment for defendant. Plaintiff brings error. Reversed.

*William E. Brown*, for appellant.

*Geer, Williams & Halpin* and *B. F. Reed*, for appellee.

McALVAY, J. In this suit, brought by plaintiff against defendant for alienation of his wife's affections, by secret and clandestine meetings, by furnishing her with intoxicating beverages, by taking her riding, by meeting her at plaintiff's house and at other places in his absence, and by other acts and devices, covering a period of time between 1901 and 1907, the result of a trial was a verdict and judgment against plaintiff. The case is here for review upon errors assigned to the rulings of the court during the

trial, upon admission and rejection of evidence, charge of the court, and refusal to charge, and also upon the refusal to grant a new trial. No adultery was charged or claimed in the case. Plaintiff was a carpenter and was intimately acquainted with defendant for several years, and their relations had always been friendly. It will not be necessary or profitable in this case to make a detailed statement of facts. The facts necessary to be stated more particularly will appear as discussion may require.

One of the principal questions is, whether the court was in error in excluding certain testimony, because in his opinion it tended to establish adultery, and was therefore under the pleadings inadmissible. Several errors are assigned to the exclusion of such testimony. The first instance relates to an occurrence in August, 1907, just before plaintiff's wife and daughter left his home, when defendant came to plaintiff's house. He was watched by plaintiff and another, who went into the basement of the house, and finally upstairs into the room where plaintiff's wife, his daughter, and defendant were. From the testimony of both plaintiff, defendant, and all other witnesses, it appears that on the night in question, after defendant had left plaintiff's house, he investigated the cause of a noise in the cellar which had been heard while he was there; that he went to the basement door, struck a match, and saw the witness Wilder in the basement. He then went back to the front of the house, called several times to plaintiff's wife, who raised a window and wanted to know what was the matter, and defendant said he had a message for her, and was then admitted. The wife and daughter, who had gone upstairs to retire after defendant first went away, came down and the three went into the cellar. They did not see the men there, but discovered plaintiff's shoes, which had been removed by him to avoid making a noise. They went back upstairs and were followed immediately by plaintiff and Wilder. This was when the women were seen in their nightclothes. Before defendant left the house and discovered Wilder, nothing

was said from which an adultery could be inferred. The two women and defendant were in the sitting room together all of the time. The principal conversation was with the daughter relative to an excursion she intended to take next day. They disagreed as to the time the train went next morning. Defendant told her to go to bed and get a good rest, and if he was not right about the train he would give her $2, but she or the mother did not go to bed, and defendant went away in a few minutes and then made the discovery of Wilder in the cellar. Plaintiff's testimony indicates the presence of defendant in his house, with his wife and daughter at a late hour, and no legitimate inference of adultery can be drawn from that fact, or from the testimony of the other witnesses to this occurrence. This testimony was therefore admissible under the pleadings, and the court was in error in excluding it. Extended consideration has been given to the facts of this particular instance for the reason that the case, as to the above facts, is distinguishable from the case of *Merrill* v. *Leisenring*, 149 Mich. 423 (112 N. W. 1072), where it is said of the testimony discussed:

" The reasonable, and practically the only, inference to be drawn from this testimony, is that it tended to show adultery."

Both opinions recognize this fact, and both hold that under the pleadings such testimony was inadmissible. The minority opinion also holding that under the statute plaintiff was not a competent witness to testify at all to any facts tending to show adultery on the part of his wife. The other instances where the court made the same ruling relative to testimony construed as tending to show adultery were none of them testified to by plaintiff, and with one exception none of that testimony could be so construed. What the testimony would have shown had the witness Wilder been allowed to testify relative to a circumstance when defendant went alone with plaintiff's wife to a room

over his saloon, we cannot say. If it was no more than this record discloses, it would be admissible.

The rule as to the admissibility of such evidence is laid down in *Merrill* v. *Leisenring*, 157 Mich., at pages 137 and 138 (121 N. W. 820), which is distinguishable from *Perry* v. *Lovejoy*, 49 Mich. 529 (14 N. W. 485), in that, in the latter case the testimony of acts of adultery was substantive and direct, and in the former merely inferential. The testimony of the several witnesses offered should have been received with the exception above made, which must be determined when it is disclosed to the court. No opinion is required or expressed upon the question as to whether plaintiff could testify at all, if his testimony tended to show adultery on the part of his wife. This does not extend to the other witnesses, and the case as to the admission of their testimony and any inference to be drawn therefrom is ruled by *Merrill* v. *Leisenring, supra*. Under the findings such testimony was material to show the conduct of defendant toward plaintiff's wife, as charged.

The court was not in error in allowing evidence on the part of the defendant, under the general issue, tending to show the state of the wife's mind and affections towards the plaintiff, and his treatment of her. *Perry* v. *Lovejoy*, 49 Mich., at pages 532 and 534 (14 N. W. 485), and numerous authorities cited.

We think, however, the court erred in allowing testimony in support of such showing on the part of defendant relative to some disagreement between plaintiff and his wife more than 30 years before this trial. This includes all the testimony connected with such disagreement. It was too remote. These parties had married in 1876, and this disagreement was soon after marriage. They became reconciled and ever afterward lived together as husband and wife until this trouble arose. This daughter, now 17 years old, was born years after the reconciliation, and it is claimed several other children were born, who have since died. It is the policy of the courts to encourage the

settlement of marital misunderstandings and disputes in the interest of both public and private good. Any other course would be contrary to a well-settled public policy.

There was testimony admitted relative to an incident which occurred about the time the plaintiff and his wife separated, relative to the refusal of the daughter to go to school, because she preferred to continue work in a cigar factory. She had theretofore been affectionate and obedient and was under 16 at the time. The father insisted that she should go to school. She said she would not, and was told she must obey him or leave. She left next day with her mother, after an altercation with her father. The demand of the father was not an unreasonable one. We cannot see how this testimony was material to the issue of alienation of the affections of the wife by defendant. It occurred after the claimed alienation of affections had been brought about by defendant. If the wife had left on that account, it was not sufficient cause. To allow this testimony was prejudicial error.

It appeared without dispute in this case that plaintiff and his wife had, in effect, lived apart for four or five years before suit was brought. She during all this time had slept upstairs separate and apart from plaintiff. Plaintiff's testimony as to a change in her regard for him after the time it is claimed defendant began to pay marked attention to her was stricken out. It is contended that this was error on the part of the court. He testified:

"There was a change in her feelings towards me after 1901, that commenced about seven years ago, somewheres about 1902. She always acted more sociable to him than she would to me."

The court was in error in striking this out. It was not a conclusion, as objected by defendant's counsel, nor did it cover more than the time limited by the question, as held by the court. The witness should also have been allowed to testify as to whether such treatment by his wife continued.

There are many other errors assigned, several of which

are well taken, but we think there is no necessity for discussion, because of our conclusions upon questions already discussed. In following our views herein expressed, they will probably be eliminated and avoided upon a new trial.

The judgment is reversed, and a new trial granted.

BIRD, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.