VAN HARTESVELDT *v.* WESTRATE.

1. HUSBAND AND WIFE—EVIDENCE—CONFIDENTIAL COMMUNICATIONS
—ADULTERY—STATUTES.

Purpose of 3 Comp. Laws 1929, § 14221, restricting testimony
of husband and wife in certain situations, especially in cases
involving adultery, is to preserve with sacredness confidences
of marriage state, and to render it impossible for either to
speculate upon other's dishonor, relying upon their own testi-
mony to make or support case.

2. SAME—ALIENATION OF AFFECTIONS—EVIDENCE—ADULTERY—STAT-
UTES.

In action for alienation of plaintiff's former wife's affections,
any testimony by either of them indicating that action was
brought in consequence of her adultery was incompetent, not-
withstanding withdrawal of count in declaration for criminal
conversation, and mutual consent of plaintiff and his former
wife to testimony revealing confidential communications
(3 Comp. Laws 1929, § 14221).

3. TRIAL—REPEATING IMPROPER QUESTIONS—MISCONDUCT OF COUN-
SEL.

Where one improper question after another is propounded tend-
ing to engender prejudice and arouse indignation of jury,
counsel's persistence constitutes reversible error, notwithstand-
ing fact that questions are excluded by court as quickly as
they are asked.

4. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—PLEADING—
AMENDMENT.

In action for alienation of wife's affections, there was no error
in permitting amendment of declaration by adding count ask-
ing damages for humiliation, disgrace, etc., suffered by plain-
tiff through defendant's alleged actions in preparing for
defense of suit.

5. SAME—EVIDENCE.

In action for alienation of wife's affections, it was not improper
to exclude testimony as to pregnancy of wife before her mar-
riage to plaintiff, and as to abortion claimed to have been
performed after marriage.

6. SAME.
   In action for alienation of wife's affections, it was proper to exclude testimony by plaintiff as to what his father had said to third party about latter's relations with plaintiff's wife, where plaintiff was not present.

Appeal from Ottawa; Miles (Fred T.), J. Sub-mitted June 7, 1933. (Docket No. 40, Calendar No. 37,219.) Decided October 2, 1933. Rehearing denied December 6, 1933.

Case by L. Philip Van Hartesveldt against William Westrate for alienation of affections of plaintiff's wife and other alleged wrongs. Verdict and judgment for plaintiff. Defendant appeals. Reversed and new trial granted.

*Leo W. Hoffman* and *Clare E. Hoffman,* for plaintiff.

*Cornelius Hoffius* and *Lokker & Den Herder* (*Russell Van Kovering,* of counsel), for defendant.

BUTZEL, J. Simultaneously with the commencement of an action for divorce by L. Philip Van Hartesveldt against his wife, LaVerna Van Hartesveldt, plaintiff Van Hartesveldt brought the instant suit against Dr. William Westrate for alienation of his wife's affections. LaVerna did not oppose the divorce suit, but on the contrary appeared as a witness on behalf of her husband. The instant suit was tried some time after plaintiff had obtained a decree of divorce. The declaration included a count for simple alienation and a second one for criminal conversation. Prior to the trial, plaintiff was permitted to amend his declaration by adding a` third count asking damages for humiliation, disgrace, etc., which he claims to have suffered through defendant's alleged actions in preparing for the defense

of the suit: Defendant denied all charges, and claimed that the case was part of a conspiracy between plaintiff and his former wife to extort money from him by means of blackmail, and that if the affections of plaintiff's wife were alienated at all, it was through her association with a party other than defendant.

The facts in the case are unpleasant, and will be referred to only as they may be necessary to discuss the various claims of error.

At the outset, plaintiff found himself confronted with the provisions of 3 Comp. Laws 1929, § 14221, which restricts the testimony of a husband or wife in certain situations, and provides:

"Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify."

As was said in *Carter* v. *Hill*, 81 Mich. 275, 279:

"The clear purpose of the statute is to preserve with sacredness the confidences of the marriage state, and to render it impossible for either husband or wife to speculate upon the other's dishonor, relying upon their own testimony to make or support a case. The purpose of the statute is salutary, and it is the duty of the courts to see that it is not disregarded."

When plaintiff took the witness stand, objection was made to his giving testimony revealing the contents of confidential communications made by his former wife during the continuance of the marital relation. In answer to this, plaintiff's former wife consented in open court to his examination as to

communications made by her to him. His consent to her testimony as to similar communications is apparent, inasmuch as plaintiff called her as his witness and the details of these conversations were brought out on direct examination.

In order to evade the prohibition in the statute, plaintiff withdrew the second count of the declaration before testimony was taken, and thereby sought to change the theory of the case from one brought in consequence of adultery to a simple alienation of affections suit, lacking elements of criminal conversation. Notwithstanding the withdrawal of the second count from the declaration, and the mutual consent of plaintiff and his former wife to testimony revealing confidential communications, any testimony given that tended to indicate that the action was brought in consequence of adultery was clearly incompetent. Plaintiff insists, however, that the testimony tends only to prove simple alienation, and that the admission of evidence in regard to actions and conversations which do not ordinarily indicate criminal conversation, even though an inference to that effect may possibly be drawn, is not improper. *Merrill* v. *Leisenring,* 157 Mich. 133; *Barnes* v. *Tibbitts,* 164 Mich. 217; *Sweikhart* v. *Hanrahan,* 184 Mich. 201.

Imparting their ordinary significance to many of the phrases and expressions employed by plaintiff and his former wife during the course of their testimony, we are irresistibly inclined to believe that they refer to criminal conversation. The record discloses much improper moral conduct on the part of many of the important witnesses, including plaintiff's former wife and plaintiff himself. Under these circumstances, none but an extremely gullible jury would assign a more innocent connotation to the ex-

pressions used. When plaintiff stated that his wife told him that she couldn't stand living with him any more after what she had done; when counsel twice asked:

"Now on one of those visits, did your wife there in the office make a statement of this transaction, of all her relations with the doctor?"

when plaintiff's former wife, called as a witness in his behalf, was asked with regard to a conversation with the defendant:

"Did you tell him that if it wasn't for one particular fact, you might listen to him?"

when again she was asked why she no longer had any love for her husband, and she stated:

"Because I wronged him;"

and when, in response to the question:

"Why did you tell Phil what you did about your relations with the doctor?"

she answered:

"Because I had wronged Phil,"

it is impossible to believe that the jury could have failed to note implications of criminal conversation.

There is further a veiled insinuation that plaintiff was not the father of both of the children borne by his former wife. The declaration, as originally filed, stated that the plaintiff and his wife had one child. Subsequently, it was amended so as to read:

"That there was born to the wife of the said plaintiff two children."

Practically no mention of the second child was made in the testimony. The judge in his charge

made reference to plaintiff, his former wife, and their "child" without any effort on the part of counsel to correct him. Testimony given by plaintiff as to the date when marital relations ceased, the age of the first child, and other facts revealed in the course of the trial, may have given rise to speculation on the part of the jury as to the parentage of the second child. We mention this so that prejudicial insinuations may be avoided should the case be tried again.

All of these facts being considered, together with the size of the verdict ($8,000), we are led to the conclusion that the question of adultery was injected into the case, not by mere inference, but almost by direct testimony. Such a conclusion is inescapable if the testimony referred to heretofore is given its ordinary meaning. We believe that the correct rule was stated in the case of *Barnes* v. *Tibbitts, supra,* 220, relied on by appellee, where the court said such testimony is to be excluded when—

"the reasonable, and practically the only, inference to be drawn from this testimony, is that it tended to show adultery."

The appellee, however, contends that in most instances appellant failed to make proper objections or requests to strike from the record the answers complained of. It is also pointed out that no fault was found with parts of the charge to the jury now claimed to be erroneous. The record shows that, in a number of instances, appellant's counsel objected to these questions but failed to state a valid basis for the objections. Defendant's counsel states that, had he been more specific in giving his reasons for objecting to the questions asked or requesting that the answers be stricken, he would have emphasized

the very evil he was seeking to prevent. We need not discuss each improper question and answer, inasmuch as the case must be reversed on other grounds. If there is a retrial, counsel should exercise due care to prevent a recurrence of the error.

Prior to the trial, traps were set by both plaintiff and defendant in attempts to obtain damaging evidence. It may be that the large verdict of $8,000 was partially influenced by revelations in the course of the trial as to the unusual method employed by a detective agency to put plaintiff in a compromising position. Figuring in the pre-trial maneuvers of the plaintiff was a young man, Wabeke, by name, who occupied desk space in the office of a Holland attorney. Wabeke first appeared in an unsuccessful attempt to record the details of an interview between defendant and plaintiff's former wife by means of a dictaphone. Later, he composed what was described during the course of the trial as a "fake" or "decoy" letter, purporting to be signed by one of the witnesses. He confronted defendant with this letter, claiming it had been so signed. He also wrote out a statement which was signed by plaintiff's former wife. Neither the letter nor the statement were ever admitted in evidence.

Counsel for plaintiff strenuously attempted to get the contents of the letter before the jury, although he knew it was not genuine. After the court had made a positive ruling that the letter could not be introduced in evidence, plaintiff's attorney continued his efforts to get its contents before the jury, compelling defense counsel to make at least three more objections to the reception of this evidence. This persistence on the part of plaintiff's counsel, coupled with defendant's unwillingness to permit such improper testimony, must have had a prejudicial effect upon the jury. Similarly, plaintiff's

attorney persisted in trying to bring before the jury the contents of the statement signed by plaintiff's former wife prior to the trial and used in an effort to force a settlement from defendant. Although the court had already made several rulings that left no doubt as to the inadmissibility of the statement, plaintiff's attorney, in the presence of the jury, stated:

"We offer it, if they want it."

The damage caused by the injection of testimony in this manner has often been commented upon and has led to the reversal of many judgments by our court.

Plaintiff attempted to justify his tactics by the assertion that defendant opened the door to such testimony by his references to the spuriousness of the letter and statement. While the door was opened to evidence designed to meet defendant's contention that Wabeke was the author of these two documents, the truth of their contents was certainly not put in issue thereby. Plaintiff admits that the letter was a "fake," and that the statement was not one made in court. Under the circumstances, their contents had no place in the record, and plaintiff's conduct constituted reversible error. *Scripps* v. *Reilley,* 38 Mich. 10; *In re Fine's Estate,* 249 Mich. 391.

Quoting from the record, we find the following:

"*Q.* Did the doctor ever say anything to you as to whether or not he had been accused of any misconduct with anybody else?

"*Mr. Lokker:* I object to that, your honor.

"*The Court:* Objection sustained.

"*Q.* Did he ever tell you anything about whether he loved his wife?

"*Mr. Lokker:* I object to that again, your honor.

"*The Court:* Sustained.

"*Q.* Did he ever tell you anything about what he would do if he found any other man around his home, making love to his wife?

"*Mr. Lokker:* I object to that, your honor.

"*The Court:* Sustained.

"*Q.* What if anything did the doctor ever say to you about what he would do if he found any other man around his house?·

"*Mr. Lokker:* Just a minute, before you answer that, I object to it, your honor.

"*The Court:* Sustained."

These questions were highly improper and prejudicial. They cannot be justified by plaintiff's claim that they were designed to show the highly confidential relationship between defendant and plaintiff's former wife. One of them might have been overlooked. When one improper question after another is propounded tending to engender prejudice and arouse the indignation of the jury, counsel's persistence constitutes reversible error, notwithstanding the fact that the questions are excluded by the court as quickly as they are asked.

Inasmuch as appellant has made other claims of error and there may be another trial of the issues, we might add that there was no error in permitting the amendment of the declaration, nor was it improper to exclude testimony as to the pregnancy of plaintiff's former wife before her marriage to him and the abortion claimed to have been performed after the marriage. It was proper to exclude testimony by plaintiff as to what his father had said to a third party about the latter's relations with plaintiff's former wife, inasmuch as plaintiff was not present.

·Other claims of error need not be discussed, as it is evident that they will be avoided if the case is retried.

The judgment is reversed, with costs to defendant, and the case remanded for a new trial.

McDONALD, C. J., and POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred. CLARK, J., took no part in this decision.