STATE BAR GRIEVANCE ADMINISTRATOR v ESTES

OPINION OF THE COURT

1. ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD—FINDINGS
OF FACT—SUPREME COURT—REVIEW.

The standard of review of the findings of fact by the State Bar
Grievance Board is that the Michigan Supreme Court must
determine whether the board's findings have proper evidentiary
support on the whole record.

2. ATTORNEY AND CLIENT—DISCIPLINE—COEXECUTOR—WILLS—CON-
FLICT OF INTEREST.

Attorney's conduct clearly warranted disciplinary action where
the attorney, although named and appointed coexecutor of an
estate, represented a client whose claim was contrary to the
provisions of the will and was antithetical to the best interests
of the estate and beneficiaries.

3. ATTORNEY AND CLIENT—DISCIPLINE—DEEDS—QUIETING TITLE—AC-
COUNTING FOR MONIES.

Attorney's conduct merits discipline where the attorney did not
fulfill his duty to take immediate action either to deliver deeds
as promised or move to quiet title in the grantees and where he
also failed to segregate and account for monies collected for a
client, although the sum involved was small.

4. ATTORNEY AND CLIENT—FIDUCIARY.

Each lawyer bears a large measure of responsibility to every
other lawyer and a lawyer who is also a fiduciary bears a
doubly high degree of responsibility and accountability.

5. ATTORNEY AND CLIENT—GRIEVANCES—COEXECUTOR—WILLS—DEEDS
—QUIETING TITLE—ACCOUNTING FOR MONIES—DISCIPLINE—
CRUEL AND UNUSUAL PUNISHMENT.

Based upon a consideration of the facts, that an attorney who

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 678–691.

7 Am Jur 2d, Attorneys At Law §§ 12–72.

[2–11] 7 Am Jur 2d, Attorneys At Law §§ 32 *et seq.,* 154–159.

was coexecutor of an estate represented a client whose claim was contrary to the provisions of the will and was antithetical to the best interests of the estate and beneficiaries, that he failed to either deliver deeds as promised or moved to quiet title, and that he failed to segregate and account for monies collected for a client, and the number of meritorious past grievances against him, the discipline imposed, a one-year suspension from the practice of law, is not cruel and unusual punishment.

## DISSENTING OPINION

### T. G. KAVANAGH and LEVIN, JJ.

6. ATTORNEY AND CLIENT—MULTIPLE CLIENTS—DISCLOSURE—CONSENT.

*A lawyer may properly represent the interests of multiple clients if it is obvious that he can adequately represent the interest of each and if, after full disclosure, each consents (DR 5-105[C]).*

7. ATTORNEY AND CLIENT—CONFLICT OF INTEREST—FIDUCIARY—EXECU-TRIX.

*There was, in substance, no conflict of interest where a lawyer represented a client in her fiduciary capacity as executrix of an estate and in her individual capacity as the inter vivos donee of stock certificates as he did not purport to represent the nominal interest of the estate in the litigation between the client and the grandchildren over whether the stock certificates were owned by the client because of joint ownership with the testatrix or were assets of the estate and, under the will, were to be received by the testatrix's grandchildren; it was not claimed that the lawyer's representation of the estate conflicted with any duty to his client and the lawyer who represented the grandchildren advanced whatever interest the estate had in that litigation.*

8. ATTORNEY AND CLIENT—CONFLICTING INTERESTS—DISCLOSURE—CONSENT—DISCIPLINARY RULES.

*After full disclosure and with the consent of all concerned lawyers often and properly represent conflicting interests; a subsection of a Disciplinary Rule provides in part "[a] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each" (DR 5-105[C]).*

9. ATTORNEY AND CLIENT—FRAUD—DISCLOSURE—FIDUCIARY—COEXEC-
   UTOR.

> *There was no fraud upon, failure to disclose the relevant facts to
> the probate court, or imposition on anyone where a lawyer
> represented a client in her fiduciary capacity as executrix of an
> estate and in her individual capacity in a stock controversy of
> whether the stock certificates were owned by the client because
> of joint ownership with the testatrix or were assets of the
> estate, the court was fully informed of the facts and when,
> certain legatees sought to have the lawyer and client removed
> as coexecutors, they resigned, and they were reinstated by the
> court after the controversy over the stock certificates was
> settled.*

10. ATTORNEY AND CLIENT—DEEDS—CARELESSNESS—DISCIPLINE—DUTY
    —QUIETING TITLE.

> *Failure of an attorney to promptly locate misplaced deeds was an
> isolated incident of carelessness and is not the sort of conduct
> which warrants discipline by the State Bar Grievance Board;
> he was under no duty to bring an action to quiet title to the
> property in question and he could not properly have com-
> menced litigation without being retained for that purpose.*

11. ATTORNEY AND CLIENT—MISAPPROPRIATION OF MONEY—FAILURE
    OF COMMUNICATION—DISCIPLINE.

> *There was no misappropriation of a client's money, only a rela-
> tively minor failure of communication, where an attorney
> failed to communicate with his client and disclose the collection
> of $45, at a time when the client owed the attorney at least
> that amount for services rendered and expenses advanced by
> the attorney; this does not warrant disciplinary action against
> the attorney.*

Appeal from State Bar Grievance Board. Sub-
mitted June 7, 1974. (No. 12 June Term 1974,
Docket No. 55,468.) Decided September 6, 1974.

Disciplinary proceedings against Walter O.
Estes. Order entered suspending respondent from
practicing law for one year. Respondent appeals.
Affirmed.

*Eugene N. LaBelle,* for State Bar Grievance
Administrator.

*Walter O. Estes, in propria persona.*

M. S. COLEMAN, J. *(affirming).* Respondent contests the State Bar Grievance Board's affirmance of an order suspending him from the practice of law for one year. Respondent contends that the facts do not support the findings and that the suspension constitutes cruel and unusual punishment.

## FACTS

Proceedings were initiated by a formal complaint of the State Bar Grievance Administrator alleging, in two counts, that respondent was guilty of misconduct. The first count concerned respondent's dilatory probating of an estate and his representation of a claim against the estate of which he was a coexecutor. The second count alleged that respondent failed to deliver, as promised, certain deeds to the grantees, failed to take prompt action to deliver the deeds or settle title and failed to segregate and account for monies received on behalf of a client.

A hearing was held April 25, 1973. Findings of fact were made June 7, 1973 and the following conclusion drawn:

1. As to count one, respondent's conduct was said to be "detrimental to and directly opposed to the interests of the estate and the beneficiaries * * * and constituted in the judgment of the Panel a conflict of interest."

2. Concerning the deeds discussed in count two, the panel said respondent "failed to take prompt and affirmative action to make delivery", failed to promptly notify "the grantees that the deeds were

lost or mislaid, or misplaced" and failed "to take prompt action in locating them and/or attempting to quiet title to the premises in question, based on his knowledge of the transaction".

3. As to the monies collected, the panel said respondent failed "to properly account", failed "to segregate said funds" and failed "to transmit funds to the client".

Based on their findings and conclusions, the panel ordered respondent suspended for one year on each count, the suspensions to run concurrently. Pursuant to respondent's petition for review, the State Bar Grievance Board heard arguments of counsel. On November 29, 1973, the board affirmed the panel's report and order.

## DISCUSSION

Since respondent's contentions concern the findings of fact, a standard of review must be established. Recently, this Court affirmed a previous suspension received by respondent. In *State Bar Grievance Administrator v Estes,* 390 Mich 585; 212 NW2d 903 (1973), we retained the standard of review established by case law.[1] We must "determine whether the Board's findings have proper evidentiary support on the whole record."

In that decision the Court felt "there was sufficient testimony and factual support on the record to enable the hearing panel and the Board to conclude as they did". We declined to substitute our judgment "for that of the panel below which had an opportunity and a mandate not only to garner evidence of misconduct but to observe and

---

[1] Among the cases cited was another decision of this Court concerning respondent's professional conduct. *See In re Estes,* 355 Mich 411; 94 NW2d 916 (1959).

assess the demeanor and credibility of the wit-
nesses."[2]

Three justices concurred in the result but felt
that the adopted standard of review improperly
reduced the Court's reviewing responsibility. They
would "closely scrutinize their records to deter-
mine whether the record support is convincing and
persuasive."

No matter what standard is applied, respon-
dent's suspension must be affirmed. The record is
replete with support for the conclusions drawn and
the discipline imposed.

## COUNT I

Respondent drafted and witnessed the will of
Edith Hanks. The instrument named respondent
and a daughter of Edith Hanks as coexecutors.
Mrs. Hanks died July 13, 1965.

The will was not offered for probate until July
1967 and then only at the insistence of an attor-
ney retained by the beneficiaries. Respondent and
his coexecutor did not file an inventory until April
1968. Certain securities distributed by the will
were not listed. Apparently, subsequent to drafting
the will, the testatrix had sought to make the
coexecutor daughter a joint owner of the securi-
ties.

The beneficiaries objected to the inventory. A
hearing was held on the question of Mrs. Hank's
competency at the time of the changing of title to
the securities. Respondent represented the daugh-
ter against the estate at the hearing contending

---

[2] Also see State Bar Grievance Administrator v Albert, 390 Mich
234; 212 NW2d 17 (1973) ("[T]he record amply supports the findings
* * * ") and State Bar Grievance Administrator v Posler, 390 Mich
581; 213 NW2d 133 (1973) ("If [the fact finders'] conclusion be based
on the preponderance of evidence we will not set it aside.")

that the securities were her property and did not belong in the estate.

The probate court ruled that Mrs. Hanks was not legally competent at the time of the change in title. The securities were to remain in the estate. Respondent appealed this decision on behalf of the daughter and again against the estate of which he was coexecutor.

The parties eventually settled the dispute. A final accounting was not filed until February, 1972. The estate was finally closed in May, 1972—seven years after the testatrix's death.

Respondent's conduct clearly warranted disciplinary action. We are not dealing in a gray or undefined area of professional conduct. Although named and appointed coexecutor of the estate, respondent represented a client whose claim was contrary to the provisions of the will and was antithetical to the best interests of the estate and beneficiaries. This is a self-evident basis for discipline.

## COUNT II

Respondent had agreed, upon the death of the grantor, to deliver certain executed deeds. Respondent retained possession of the deeds. The grantor died in March, 1971.

Respondent was unable to deliver the deeds as they had been misplaced. The grantees communicated with respondent concerning delivery and he informed them that the deeds had been lost. The deeds were not located until shortly after respondent received notice that he was the subject of a formal complaint. This was two years after the grantor's death.

Respondent took no action to settle title to the

lands in question. One grantee was to receive land upon which there was a land contract. In the two years the deeds were misplaced, payments on the contract went to the grantee's stepmother, who retained them. A house deeded to the same grantee was damaged by fire. The grantee had no opportunity to insure the building. What insurance there was had been obtained by another and the company was contesting the claim.

Respondent also represented the same grantee in a collection suit and received a favorable judgment. Respondent collected $45 which he intended to retain for expenses and fees. There was no formal fee arrangement nor did respondent ever submit a bill for services rendered or otherwise communicate with his clients. When notified of the filing of a complaint, respondent sent the complainant a check for $22.50.

In both instances respondent's conduct merits discipline. It was his duty to take immediate action either to deliver the deeds as promised or move to quiet title in the grantees. This duty was not fulfilled. Respondent's failure to segregate and account for monies collected for a client cannot lightly be passed over, although the sum involved is small.

## CONCLUSION

There is adequate convincing and persuasive evidentiary support in the record to affirm the conclusions of the State Bar Grievance Board.

Further, this is the third disciplinary action against Mr. Estes to be affirmed by this Court.

Unfortunately, practicing lawyers and the judiciary, as well as the court system itself, suffers a

loss of confidence through acts and failures to act
such as those evidenced herein. Each lawyer bears
a large measure of responsibility to every other
lawyer. A lawyer who also is a fiduciary bears a
doubly high degree of responsibility and accounta-
bility.

Based upon a consideration of the facts of this
matter and the number of meritorious past griev-
ances against Mr. Estes, the discipline imposed is
found not be be "cruel and unusual".

Affirm.

T. M. KAVANAGH, C. J., and SWAINSON, WIL-
LIAMS, and J. W. FITZGERALD, JJ., concurred with
M. S. COLEMAN, J.

LEVIN, J. *(for reversal)*. A lawyer may properly
represent the interests of multiple clients if it is
obvious that he can adequately represent the in-
terest of each and if, after full disclosure, each
consents. DR 5-105(C).

The interest of the grandchildren of the dece-
dent, to whom stock certificates were bequeathed,
was represented by a lawyer retained by them.
Walter Estes, lawyer for Margaret Pemberton both
in her fiduciary capacity as executrix of the estate
of the decedent and in her individual capacity as
the inter vivos donee of the stock certificates, did
not purport to represent the nominal interest of
the estate in the litigation between Pemberton and
the grandchildren; the lawyer who represented the
grandchildren advanced whatever interest the es-
tate had in that litigation. It is not claimed that
Estes' "representation" of the estate conflicted
with any duty to Pemberton. There was, in sub-
stance, no conflict. The other issues are insubstan-
tial.

I

Edith Hanks died on July 13, 1965. Walter Estes
had represented her for several years. He drafted
her will which named Estes and Margaret Pember-
ton, Hanks' daughter, coexecutors, named Pember-
ton as a beneficiary and provided that Hanks'
grandchildren were to receive certain stock certifi-
cates.

A month before Hanks died, while she was in
the hospital, she made Pemberton a joint owner of
the stock certificates. Neither Pemberton nor Estes
was present when Hanks signed over the certifi-
cates. Hanks died of malacia, a degenerative dis-
ease of the brain.

Pemberton notified Estes of her mother's death
and told him there was nothing to probate because
all the assets had been made joint with her.

Estes did not present the will for probate. A
granddaughter communicated with him regarding
the will. Estes told her that it was not necessary to
probate the will as all assets had been made joint
with Pemberton. Some of the grandchildren then
hired a lawyer who demanded that the will be
probated.

The will was admitted to probate in July, 1967.
Estes and Pemberton qualified as coexecutors.
They filed an inventory in April, 1968. The stock
certificates were listed as having been made joint
with Pemberton shortly before Hanks' death.
There was no effort to conceal the existence or
value of the certificates.

The grandchildren filed objections to the inven-
tory. A hearing was held in the probate court to
determine whether Hanks was competent at the
time the securities were made joint. Pemberton
claimed ownership of the securities. Estes repre-

sented her at the hearing; he also testified for her concerning Hanks' competency. The probate court found that Hanks lacked the requisite competency at the time of the transfer and that the certificates should go to the estate, not to Pemberton. Estes, on behalf of Pemberton, appealed this decision to the circuit court.

The grandchildren then, for the first time, made demand in the probate court that Estes *and* Pemberton resign because of an alleged conflict of interest. Before a hearing was held, Estes and Pemberton told the probate judge they would resign if he felt there was a conflict. The judge apparently so felt; Estes and Pemberton resigned.

A settlement was negotiated and the litigation terminated before decision in the circuit court. Pemberton and Estes were then reinstated as coexecutors. The final account was filed in February, 1972.

## II

Estes was not charged with failure to proffer the will or failure to bring the possible interests of the grandchildren to their attention. Nor was he charged with "dilatory probating of an estate." See *State Bar Grievance Administrator v Jackson,* 390 Mich 147, 155; 211 NW2d 38 (1973). There is no allegation that Estes' actions resulted in prejudice to the grandchildren or loss to them or the estate.

Estes was disciplined because he represented Pemberton in her controversy with the grandchildren while he was the lawyer for the estate.

At the grievance hearing, Estes maintained that the interest of Pemberton and the interest of the estate were the same. The State Bar Grievance

Board was troubled by Estes' failure to even per-
ceive a potential conflict.

The board thought that the conflict was obvious;
both Pemberton and the estate claimed the stock
certificates. If Pemberton won, the certificates
would become her individual property. If she lost,
they would go to the estate and be distributed to
the grandchildren according to the provisions of
Hanks' will.

The board's reasoning fails to distinguish be-
tween the "estate" and the "legatees". The real
adversaries were not the estate and Pemberton but
the grandchildren and Pemberton. The estate had
no substantial interest in the outcome of the con-
troversy. The certificates would go either to Pem-
berton or to the grandchildren. The estate's inter-
est was nominal. In substance it had none.

In his representation of Pemberton in her con-
troversy with the grandchildren, Estes did not
espouse a position for or undertake to represent
the estate.

Lawyers often and properly represent conflicting
interests after full disclosure and with the consent
of all concerned:

"[A] lawyer may represent multiple clients if it is
obvious that he can adequately represent the interest of
each and if each consents to the representation after
full disclosure of the possible effect of such representa-
tion on the exercise of his independent professional
judgment on behalf of each." DR 5-105(C).

Estes did not purport to represent the estate in
the Pemberton-grandchildren litigation. Whatever
interest the estate had in the matter was advanced
by the lawyer for the grandchildren. Under those
circumstances, even if it is thought that Estes
represented the nominal interest of the estate, it

appears "obvious" that he could "adequately" represent that nominal interest although at the time he was representing the interest of Margaret Pemberton. We exalt form over substance in finding that Estes *represented* conflicting interests.

## III

*Logan v Logan,* 97 Ind App 209; 180 NE 32 (1932), presents a situation much like the instant case. Attorneys who had represented the decedent for a long time prior to his death accepted employment as attorneys for the administratrix of his estate. The administratrix and her children claimed that certain property had been given to them by the deceased. An heir brought suit against the administratrix in the name of the estate claiming that the property belonged to the estate. The Court held that it was not improper for the attorneys to represent her in this action. It rejected arguments that the attorneys had accepted "inconsistent employment", and that it was "unfair and contrary to law and good ethics" for them to appear for the administratrix and represent her "in defeating the claim" of the estate against her.

In *In re Estate of Wright,* 165 Ohio St 15, 23; 133 NE2d 350, 356 (1956), the lawyer-administrator contracted to represent a claimant against the estate for a percentage of the proceeds the claimant would realize. The Supreme Court of Ohio held that failure to disclose this arrangement to the Court and all interested parties was a fraud upon the Court:

"It is a fundamental principle of law that, where parties having different interests are involved, no lawyer can represent or receive compensation from such

parties *without a full disclosure, to all the parties involved,* of his dual representation and the arrangements as to the compensation to be received therefrom.

"Every lawyer worthy of the name learns this principle *ab initio.* In fact, it is indicated in the oath of office he takes upon his admission to the bar. It follows that, where one is acting as an administrator of an estate, his sole duty is to its proper administration, and he can not properly have an arrangement to represent a claimant against the estate *without a full disclosure of such arrangement to the court and to all persons concerned in the estate,* not only as to the terms of the arrangement but as to the compensation he. is to receive therefrom." (Emphasis supplied.)

The lawyer was subsequently disciplined by the Ohio Board of Commissioners on Grievances and Discipline; the Ohio Supreme Court upheld the finding of unprofessional conduct and the discipline imposed. *Cleveland Bar Association v Pleasant,* 167 Ohio 325; 148 NE2d 493; 4 Ohio Op 2d 433 (1958).

In the instant case, the probate court was fully informed of the facts and when, ultimately, the grandchildren sought to have Estes and Pemberton removed, they resigned. They were reinstated by the court after the controversy over the stock certificates was settled. There was no fraud upon or failure to disclose the relevant facts to the court or imposition upon anyone.

I would reverse the finding of unprofessional conduct under Count I. '

## IV

The first charge under Count II concerns misplaced deeds. Estes was disciplined for failing either to promptly locate the deeds or to bring an action to quiet title to the property involved. The

deeds were ultimately found by Estes in a closed file of a totally unrelated matter and turned over to the owner.

This appears on this record as an isolated incident of carelessness and is not the sort of conduct which warrants discipline by the State Bar Grievance Board.

Not only was Estes under no duty to bring an action to quiet title to the property in question, he could not properly have commenced litigation without being retained for that purpose.

The second charge under Count II concerns the collection of money for a client. It would have been better if Estes had communicated with his client and disclosed the collection of $45. At the time, however, the client owed Estes at least that amount for services rendered and expenses advanced. There was no misappropriation of a client's money, only a relatively minor failure of communication.

I would, thus, also reverse the finding of unprofessional conduct under Count II for the reason that neither charge warrants disciplinary action.

T. G. KAVANAGH, J., concurred with LEVIN, J.