STATE BAR GRIEVANCE ADMINISTRATOR v RYMAN

Docket No. 56296. Submitted April 9, 1975 (Calendar No. 9).—Decided May 27, 1975.

Frank H. Ryman was charged by the State Bar Grievance Administrator with professional misconduct in that he drew five antedated quitclaim deeds for a client who had died more than seven months earlier, by which the client and her daughter were made joint tenants, signed the name of the deceased client on these deeds as grantor with the intent to pass the signature off as his client's, and witnessed each deed under his own signature; and that he forged the signature of the client with the intent to injure or defraud another person, other heirs to the estate, and the state and Federal governments. A State Bar Grievance Board Hearing Panel ordered respondent suspended from practice of law for 15 months. The State Bar Grievance Board affirmed the panel's findings and order of suspension, with one change being made in the findings: the word "forgeries" was changed to the phrase "uttering and publishing". Respondent appeals. *Held:*

1. The State Bar Grievance Board's findings of fact and conclusions that the respondent had done the act charged are amply and properly supported on the record.

2. The acts charged amount to professional misconduct as violations of the Canons of Professional Ethics and were made grounds for discipline by the State Bar Rules.

3. Since the facts and conclusions of the State Bar Grievance Board were properly supported on the record and, in turn, properly support discipline based on the applicable rules and canons, it is unnecessary for the Supreme Court to decide whether or not the allegation of misconduct in the complaint based on violation of the Michigan Penal Code requires proof of all the statutory elements of the crimes because the allegation is surplusage—professional misconduct has been demonstrated.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Attorneys At Law § 32 *et seq.*
[3, 4] 7 Am Jur 2d, Attorneys At Law § 50 *et seq.*

4. The findings and conclusions fully support and warrant disciplinary action.

1. ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD—FINDINGS OF FACT—EVIDENCE.

Findings of fact by the State Bar Grievance Board that a lawyer improperly signed the name of his deceased client to antedated deeds for the purpose of making title to real property joint between the client and her daughter were properly supported on the record where the lawyer conceded in his answer to the formal complaint that he admitted the breach of professional conduct charged, consistently admitted legal misconduct before the hearing panel, and plainly admitted that he signed the client's name, that he could not produce a power of attorney to do so, and that the deeds were not signed so as to indicate signing under the aegis of a power of attorney.

2. ATTORNEY AND CLIENT—PROFESSIONAL MISCONDUCT—STATE BAR RULES—CANONS OF PROFESSIONAL ETHICS—DEEDS.

Charges of professional misconduct were properly supported on the record under the State Bar Rules and Canons of Professional Ethics where a lawyer was found to have signed his deceased client's name to deeds as grantor after her death, to have concealed this fact from his client's daughter, who was a co-grantee under the deeds, and to have antedated the deeds to make them appear as if they were genuine, when the Canons in effect at the time of the misconduct provided that the office of attorney does not permit, much less does it demand of him for any client, violation of the law or any manner of fraud or chicane and that it is unprofessional and dishonorable to deal other than candidly with the facts in drawing affidavits and other documents (Canons of Professional Ethics 15, 22).

3. ATTORNEY AND CLIENT—PROFESSIONAL MISCONDUCT—CANONS OF PROFESSIONAL ETHICS—CRIMINAL LAW.

The State Bar Rules and Canons of Professional Ethics proscribing professional misconduct do not envisage criminal proceedings, nor is discipline necessarily premised on statutory violations, and an allegation of violation of the Michigan Penal Code is surplusage in a complaint which charges professional misconduct without regard to the statute violations.

4. ATTORNEY AND CLIENT—PROFESSIONAL MISCONDUCT—CRIMINAL LAW.

Failure to prove the criminal offense of uttering and publishing was irrelevant in a grievance proceeding against a lawyer

where the proceedings did not commence or proceed in absolute reliance on the criminal statutes but were based on charges of professional misconduct in dealing with documents, which is proscribed by State Bar Rules and the Canons of Professional Ethics.

*Eugene N. LaBelle,* for the State Bar Grievance Administrator.

*Paul L. Greer, P. C.,* and *Cholette, Perkins & Buchanan* (by *Richard D. Ward),* for respondent.

WILLIAMS, J. This case comes to us on claim of appeal from the State Bar Grievance Board. Appellant, Judge Frank Ryman,[1] contends that the professional misconduct of executing a conveyance by signing the name of his deceased client, signing the names of witnesses, etc., charged and found by the Board was not adequately proven. We disagree.

## I —*Facts*

On January 28, 1974, subsequent to an investigation conducted by the staff of the State Bar Grievance Administrator, appellant Ryman was charged, in a formal complaint filed by the State Bar Grievance Administrator, with professional

[1] All charges in the instant case pertain to conduct prior to Judge Ryman's assumption of judicial duties.

We do note, however, that concurrent disciplinary proceedings against Judge Ryman have concluded in the Judicial Tenure Commission and are now pending on petition for review before this Court. These Tenure Commission proceedings involve a number of charges of misconduct concerning activities *both* prior to and during Judge Ryman's judicial tenure. The present State Bar and General Court Rules regarding the jurisdiction of the State Bar Grievance Board (State Bar Rules 15 and 16) and the Judicial Tenure Commission (GCR 1963, 932) appear to permit such parallel proceedings *(Cf. In re Kapcia,* 389 Mich 306; 205 NW2d 436 [1973]). We hereby advise the Bar of our intention to consider amendments to these rules in order to give the Judicial Tenure Commission sole disciplinary jurisdiction over attorneys while they are serving in judicial capacities.

misconduct involving the following (summarized)
allegations: that appellant prepared five quitclaim
deeds for a client, Elizabeth Caudill, on September
17, 1971 even though Mrs. Caudill died more than
seven months earlier, on February 8, 1971; that
appellant caused each deed to be antedated to
October 28, 1970; that appellant then signed the
name of his deceased client, Elizabeth Caudill, on
these deeds as grantor with the intent to pass his
signature off as his client's; that appellant then
proceeded to witness each document under his own
signature; and finally, that appellant "forged the
signature of Elizabeth Caudill with the intent to
injure or defraud another person to *[sic]* entity to
wit, other heirs to the estate of Caudill, and/or the
State and Federal governments". After reciting
these factual allegations, the complaint concluded,
*inter alia,* in paragraph "I":

"I. That the conduct of Respondent as alleged in
paragraphs A through H of this formal complaint con-
stitutes professional misconduct proscribed by former
Supreme Court Rule 14.2(2)–(5), Supreme Court Rule
15.2(2)–(5), the Canons of Professional Ethics to wit,
Canons 15, 16, 22 and 32, the Code of Professional
Responsibility to wit, Canon 1, DR 1-102(A)(3)(4) and (6),
and MCLA 750.248, and MCLA 750.249."

In his Answer to the Formal Complaint, appel-
lant Ryman, *inter alia,* conceded, with respect to
paragraph "I", *supra:*

"I. Respondent admits the breach of professional
conduct as a legal matter, and further states that no
moral guilt is acknowledged."

A State Bar Grievance Board Hearing Panel
after a full hearing held on March 11, 1974, unani-
mously made the following "Findings of Fact":

"The gist of the complaint is that the respondent signed the name of his client to a number of deeds conveying real estate. The deeds were made for the purpose of making title joint between the client and her daughter. The respondent did not indicate in the signature or in the acknowledgment that he was signing in behalf of his client, the grantor, or pursuant to any power of attorney. It is respondent's claim that he had authority from his client to act in her behalf and that she had done so on a number of occasions previously and that he had always honored such action on his part. Respondent admitted knowing the correct way to execute a deed under power of attorney. He was of the impression that he had such power of attorney but was unable to find same, and it was not introduced as an exhibit. Although the respondent admitted signing the deeds in question a handwriting expert testified that the signatures on the deeds were not those of the grantor named therein his testimony being based on a comparison of genuine signatures with those on the deeds in question. The expert further testified that there was an attempt to duplicate the signature of the grantor and that it was not in the normal handwriting of the respondent. The expert further testified that his examination of the documents in question indicated erasures as to date. A former secretary for respondent, Linda Mason, testified that during her term of employment from June of 1965 through July of 1970 she had observed the respondent to frequently affix the signature of grantors to deeds, to likewise himself write in the names of fictitious witnesses and also to sign the name of the notary on acknowledgments."

The hearing panel concluded, *inter alia:*

"Generally it can be said that the material allegations in the complaint were fully supported by the evidence and upon admissions of respondent both in his answer and in his testimony.

"Respondent denies any intention to defraud, denies any moral turpitude in connection with his aforesaid conduct and there is nothing in the record to prove or

in fact to indicate that he personally profited from his admitted forgeries. The acts of respondent even though he did not profit therefrom were illegal, place in question the validity of title of several pieces of real estate and also raise serious problems relative to inheritance tax, federal estate tax, penalties and interest in relation to the Estate of Elizabeth Caudill, the grantor, now deceased."

Fifteen months suspension from the practice of law was ordered.

On September 9, 1974, after a further hearing on August 23, 1974, held before the State Bar Grievance Board itself, the Order of Discipline and Findings of Fact of the hearing panel were affirmed, with one change being made in the findings: the word "forgeries" was changed to the phrase "uttering and publishing". Appellant was further ordered to pay costs of $1,176.10.

This Court granted a stay of proceedings on December 23, 1974. 393 Mich 908.

## II —Board's Findings Properly Supported on Record

As noted before, appellant conceded in his Answer to the Formal Complaint that he "admits the breach of professional conduct as a legal matter". Appellant consistently admitted such legal misconduct before the hearing panel. For example:

"I do admit a legal error * * * ."

          *     *     *

"I have no legal argument to make * * * . I appreciate the fact that my procedure is shotty [sic], to say the least, I make no excuse for it, except that is the way we —the kind of people that I dealt with and that is the way we did it.

          *     *     *

"I am not trying to defend myself whatsoever
* * * ."

Further, without regard to his conclusory admissions of legal misconduct, appellant plainly admitted signing his client's name to the deeds,[2] he conceded that he could not produce an authorizing power of attorney[3] nor, he admitted, were the deeds signed so as to indicate signing under the aegis of a power of attorney.[4]

Appellant also admitted that he did not inform Mrs. Caudill's daughter, to whom he delivered the deeds in September, 1971,[5] that he had signed the deeds rather than her mother until March, 1974, at a time after the daughter had already been subpoenaed to appear before the Grievance Board in connection with the proceedings in this matter.[6]

Aside from all these uncontroverted admissions, appellant sometimes admitted signing the deeds

---

[2] See, for example: Answer, Part 4(e), p 5a; appellant's testimony: 44a; 50a.

[3] Appellant equivocated on the issue of whether or not he had ever obtained a power of attorney though he clearly conceded he could not produce one. At one point, appellant testified:

"Now, as far as the power of attorney is concerned, I have never signed anything for her as power of attorney; I have signed as many of her deeds and papers as she has for herself, there is no argument about that. People accepted my signature as her signature and vice versa.

"When I put her name on there, it wasn't a forgery, as such, because I did it with her knowledge and consent; that took place down through the years. It wasn't pursuant to a regular power of attorney, because it wasn't signed as attorney, in fact; it was signed with her signature, and I make no denial of that." (Emphasis added.)

At other points, appellant averred he could not find the power of attorney. (See testimony: 44a; 46a; 165a–167a.)

[4] See, for example, appellant's testimony 100a–101a; 168a.

[5] Appellant equivocated about the date he delivered the deeds to Mrs. King. See Transcript: 62a. However, Mrs. King testified she received them on or about September 17, 1971. See Transcript: 129a–130a.

[6] Appellant's testimony: 87a–88a; testimony of Mrs. King: 135a; 143a.

with Mrs. Caudill's name after Mrs. Caudill's death,[7] and sometimes he equivocated on the same question.[8] Appellant denied antedating the deeds.[9] However, expert testimony by a professional Michigan State Police document examiner established unmistakable erasures on two of the deeds changing the date from September, 1971, to October 28, 1970.[10] A former secretary of appellant also testified as to appellant's general practice of signing others' names as grantors and as witnesses, even fictitious witnesses, on deeds[11] and she also testified in an affidavit as to the specific signing and antedating of the deeds in question in this case[12] noting, additionally, that on at least one of the deeds in question, appellant also signed the name of a former secretary as a witness and notary.

In bar grievance matters, this Court must determine "whether the Board's findings have proper evidentiary support on the whole record". *State Bar Grievance Administrator v Estes,* 390 Mich 585, 593; 212 NW2d 903 (1973); *State Bar Grievance Administrator v Estes,* 392 Mich 645, 649; 221 NW2d 322 (1974); *State Bar Grievance Administrator v Posler,* 393 Mich 38, 39; 222 NW2d 511 (1974). As noted, the hearing panel found the "material allegations in the complaint * * * fully supported by the evidence and upon admissions of respondent". The State Bar Grievance Board "con-

---

[7] *See, for example,* Answer, Part 4(e), p 5a; appellant's testimony: 49a; 167a–168a.

[8] *See, for example,* appellant's testimony: 89a; 96a–97a.

[9] *See,* Answer, Part 4(e), p 5a. However, appellant did equivocate to some extent on this point also. *See* appellant's testimony: 50a–53a; 76a.

[10] Testimony: 112a–114a.

[11] *See* Testimony: 121a–122a. Appellant plainly admitted signing other clients' names as grantors on deeds as well as Mrs. Caudill's. *See* appellant's testimony: 84a–86a.

[12] *See* Affidavit, State Bar Exhibit #2; read into the record at 39a–40a.

firm[ed] the findings of fact of the Hearing Panel". The charges in the complaint are summarized in the facts. We conclude that the board's findings of fact and conclusions therefrom are amply and properly supported on this record.

### III — *Do Findings of Fact Support a Finding of Unprofessional Conduct?*

Do these factual findings support a finding of unprofessional conduct?

State Bar Rule 14, § 2(3) (now Rule 15, § 2[3]) makes the following acts grounds for discipline:

"(3) Conduct that is contrary to justice, ethics, honesty or good morals".

Canons 15 and 22, in effect on the date of the alleged misconduct,[13] proscribe *inter alia,* the following acts, and are made grounds for discipline through Rule 14, § 2(4):

"The office of attorney *does not permit,* much less does it demand of him for any client, violation of law or *any manner of* fraud or *chicane.*" (Emphasis added.) Canon 15.

"It is *unprofessional* and dishonorable *to deal other than candidly with the facts in * * * drawing* affidavits and other *documents * * * .*" (Emphasis added.) Canon 22.

Certainly, *at the very minimum,* even aside from appellant's own admissions of professional misconduct "as a legal matter" (violation of Canon 15), there is amply supported evidence on this

---

[13] The Code of Professional Responsibility and Canons, now in effect, were not adopted by this Court until October 4, 1971.

record of "deal[ing] other than candidly with the facts in * * * drawing * * * documents". Canon 22. Appellant was properly found to have signed his former client's name to deeds as grantor after her death, to have concealed this fact from his client's daughter (a co-grantee under the purported deeds), and to have antedated the deeds to make them appear as if they were genuine.

In sum, the charges of professional misconduct in this case were properly supported on this record under the applicable State Bar Rules and Canons of Professional Ethics.

## IV —*Alleged Failure to Prove Statutory Crime Irrelevant*

Appellant characterizes the formal complaint in this case, quoted in part, *supra,* as "charging appellant with one act of professional misconduct, the forgery and subsequent uttering and publishing, as defined in Michigan Criminal Statutes MCLA 750.248 and MCLA 750.249, of five real estate deeds".

Accordingly, appellant asserts, "the finding of professional misconduct can be upheld only if all the elements of the criminal offense of uttering and publishing were established".

However, as is clear from the charging portion of the Complaint, paragraph "I", quoted *supra,* these proceedings did not commence or proceed in absolute reliance on the criminal statutes.

The Complaint is primarily based, by its terms, on charges of "professional misconduct" proscribed by State Bar Rules and the applicable canons. These rules and canons do not envisage criminal proceedings—nor is discipline necessarily premised on statutory violations.

Since, as was demonstrated, the facts and conclusions of the State Bar Grievance Board were properly supported on the record (Part II hereof) and, in turn, properly support discipline based on the applicable rules and canons (Part III), it is unnecessary for us to decide whether or not the allegation of misconduct in paragraph "I" of the Complaint based on violation of MCLA 750.248; MSA 28.445, and MCLA 750.249, MSA 28.446 requires proof of all the statutory elements of the crimes. Such allegation is surplusage—professional misconduct has been demonstrated regardless.

Counsel for the Bar Grievance Board was clear and correct in his approach to this matter:

"Of course, what we are concerned with * * * is not so much as a crime but unprofessional conduct. Indeed, if you find that the Judge * * * forged these matters, that may be grounds for the prosecutor to take whatever action he deems advisable under the circumstances, but I don't have to prove, obviously, as you know, the Judge to be a criminal; I only have to prove that he has acted unprofessionally."

It appears that counsel for appellant is mistaken in his argument. Again, as was shown in parts II and III of this opinion, the evidence of professional misconduct is clear on this record both on the basis of admissions and testimony before the hearing panel and board.

## V —*Conclusion*

We conclude that the hearing panel's and board's findings and conclusions are properly supported on the whole record. We further conclude that these findings and conclusions fully support and warrant disciplinary action.

The Order of the State Bar Grievance Board of September 9, 1974, is affirmed in full.

Costs to appellee.

T. G. KAVANAGH, C. J., and LEVIN, M. S. COLE-MAN, and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.

SWAINSON, J., and the late Justice T. M. KAVANAGH took no part in the decision of this case.