STATE BAR OF MICHIGAN *v.* BLOCK.

1. ATTORNEY AND CLIENT—DISBARMENT—CONSTITUTIONAL LAW—
SELF-INCRIMINATION—REFUSAL TO ANSWER QUESTIONS.

United States Supreme Court decision that a state may consistently with the Fourteenth Amendment disbar an attorney who, relying on his state privilege against self-incrimination, has refused to answer material questions of a duly authorized investigating authority relating to alleged professional misconduct, has been overruled by subsequent opinion of that Court (US Const, Am 14).

2. CONSTITUTIONAL LAW—CRIMINAL LAW—COERCED STATEMENTS.

The protection of the individual under the Fourteenth Amendment of the United States Constitution against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that prohibition extends to all members of our body politic (US Const, Am 14).

3. ATTORNEY AND CLIENT—DISBARMENT—HEARING—SELF-INCRIM-
INATION—COERCION—CONSTITUTIONAL LAW.

Calling of an attorney for cross-examination by State Bar Grievance Committee at a formal hearing pursuant to rules of the Supreme Court governing the State Bar to determine if that attorney is guilty of professional misconduct, is not unconstitutional as a violation of that attorney's Fifth Amendment privilege against self-incrimination, where there is no fact or inference that anyone connnected with the State Bar warned the attorney that he might lose his license or otherwise coerced or threatened him, and the attorney after raising his Fifth Amendment objection voluntarily took an oath and freely testified without incriminating himself and without objection either by him or his defense counsel to any question (US Const, Am 5; State Bar Rule 15, § 9).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 7 Am Jur 2d, Attorneys at Law § 68.
[2] 29 Am Jur 2d, Evidence § 566 *et seq.*
[4, 5] 7 Am Jur 2d, Attorneys at Law § 21 *et seq.*

4. ATTORNEY AND CLIENT—DISBARMENT—VIOLATION OF DUTY.

A lawyer need not be proved a criminal before he can be disbarred; it need only be shown that his conduct proves he is unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney.

5. ATTORNEY AND CLIENT—DISCIPLINE—PROTECTION OF THE PUBLIC—PUNISHMENT.

Discipline of an attorney under Supreme Court rules governing the State Bar is a measure necessary for protection of the public, courts, and legal profession, and is not a punishment for wrongdoing (State Bar Rule 15, § 16).

Appeal from Court of Appeals, Division 3, Lesinski, C. J., and J. H. Gillis and T. G. Kavanagh, JJ., affirming Kent, Archie D. McDonald, Leo B. Bebean and Leo W. Corkin, JJ., presiding. Submitted October 7, 1969. (Calender No. 2, Docket No. 51,992.) Decided April 13, 1970.

9 Mich App 698, affirmed.

Disbarment proceedings against Clem H. Block. Order of disbarment entered. Defendant appealed to Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*F. William Hutchinson,* for the State Bar of Michigan.

*Earl Waring Dunn,* for defendant.

BLACK, J.  The issue we have accepted for review is new; new in the sense that it is an understandable stranger to the comprehensively thorough report of the commissioned State Bar Grievance Committee, the rule-required certification of the State Bar Commissioner at Large, the opinion of the three-judge circuit court, and the opinion of Division 3 of the

Court of Appeals. Such new issue calls for test of the validity, as applied here, of sections 9 and 29 of Rule 15 of the State Bar of Michigan.[1] It is an issue which, as we shall see, has grown to the stature of widespread public interest and major significance to our jurisprudence.

Like so many criminal matters coming before the courts of the states these days, we find that this disbarment proceeding was instituted and conducted, through a duly affirming judgment of the circuit court, under the supposedly dependable auspices of a supremely controlling and quite indistinguishable judicial decision. That decision is *Cohen* v. *Hurley* (1961), 366 US 117 (81 S Ct 954, 6 L Ed 2d 156). There the Supreme Court ruled that a state may, "consistently with the Fourteenth Amendment, disbar an attorney who, relying on his state privilege against self-incrimination, has refused to answer material questions of a duly-authorized investigating authority relating to alleged professional misconduct."

However, by application for leave to appeal from the subsequent affirming judgment,[2] it was pointed out that the Supreme Court in the interval had overruled *Cohen* v. *Hurley* by *Spevack* v. *Klein* (January 16, 1967), 385 US 511 (87 S Ct 625, 17 L Ed 2d 574). We granted the application, solely to review in the light of intervening *Spevack;* the respondent having abandoned all of the meritorious questions

---

[1] For convenient reference and comparison, these sections of Rule 15 are set forth as an appendix, post at 393.

[2] *In Re Block* (1968), 9 Mich App 698. The opinion of Division 3 appearing there makes no mention of the constitutional question we have accepted for review. That may be due to the fact that respondent did not raise the *Spevack* question, adequately or on time, in the Court of Appeals. See *Taunt* v. *Moegle* (1956), 344 Mich 683, 686, and application there of the rule of "dubious presentation" of constitutional questions, quoted from *Aircraft & Diesel Equipment Corp.* v. *Hirsch* (1947), 331 US 752, 763 (67 S Ct 1493, 91 L Ed 1796).

which Division 3 considered in its opinion. See 381 Mich 755 in conjunction with that opinion, 9 Mich App commencing at 701.

Respondent's application came here almost simultaneously with advent of a critical onslaught, directed at the legal profession and the judicial system of Michigan by certain legislators, the latter stimulated if not prodded by a sensation-bent Detroit daily newspaper. The spearhead of such criticism is that the legal profession, functioning under disciplinary rules adopted by this Court, has not proceeded effectively against certain of its allegedly errant members and, therefore, that the legislature should take from the judicial branch the responsibility for disciplinary measures and make provision therefor by exclusory legislation. The developing upshot is that this Court stands in the midst of noisy demands for more drastic discipline of lawyers and equally imperative *Spevack* bids for protection of their constitutional rights.

To steal a phrase from the *Garrity* case (cited and considered *post*), here we are between the rock of *Spevack* and the fearsome whirlpool of legislative displeasure. Not that we mind, of course, as presently will be made evident.

Needless to say, the respondent's application was granted in the light of all this general commotion, he having taken position that "sections 9 and 29 of Rule 15 of the State Bar of Michigan are unconstitutional by reason of  *  *  *  *Spevack* v. *Klein*, 385 US 511, decided January 17 [*sic*], 1967."

The turnabout effected by *Spevack* was of course unforeseen as this proceeding wended its lengthy and cautiously exhaustive way through complaint, investigation, thorough hearing, administrative order of disbarment, appeal to the circuit court and judgment there. Yet here we are, confronted by in-

terjected *Spevack,* with no hint that in the ultimate it will be held retroactively or prospectively effective. In that regard *Spevack* is like *Boykin* v. *Alabama* (June 2, 1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274); a case which today impales the courts of the states on both horns of a new dilemma as applications, petitions and motions for retroactive application of *Boykin* pour in from the prisons and the ranks of probationers and accused persons out on bail.

In view of our decision to affirm upon reasons given *post,* we shall assume that the Supreme Court will say some day that *Spevack* relates back to all disbarments and suspensions hitherto ordered in the United States where, as in *Spevack,* the lawyer charged has raised and saved his constitutional right to remain silent when faced by accusation of professional misconduct. That assumption points up for answer the State Bar's accurately counterstated and presently determinative question:

"Where a State Bar Grievance Committee called appellant to answer questions pursuant to § 9 of Rule 15 of the Supreme Court Rules governing the State Bar of Michigan and appellant objected to being called, but then immediately proceeded to testify and made no further objections, was his Fifth Amendment privilege against self-incrimination violated?"

The question grows out of this colloquy, before the rule-provided grievance committee on August 4, 1965, when the respondent was called to testify:

"*Mr. Dunn (for respondent)*: Yes, Mr. Chairman. * * * And at this time I would also like to state on the record my objection to calling Mr. Block, if the calling is done by reason of any authority given in § 9 of Rule 15 of the rules of the State Bar, for the reason that we contend that the provision in this § 9

of Rule 15, requiring the respondent to answer all questions pertaining to his conduct that may be put to him by the chairman and so forth, is a violation of his constitutional rights and that that provision is unconstitutional. I want to state that on the record.

"*The Chairman:* What particular section of the Constitution are you relying on?

"*Mr. Dunn:* Against self-incrimination, because that makes no exception. It says he must answer all questions that are put to him.[3]   *   *   *

"*Mr. Dunn:* May I make my position clear. Apparently it has been misunderstood. Mr. Block is present in court or before this committee to answer such questions as may be put to him, pursuant to the provision of these rules. My position is, however, that the rules themselves, or that this rule is unconstitutional, and I am saving that objection on the record; that while Mr. Block may be complying with the provisions of the rule in cooperating with the committee, he still contends that that is an unconstitutional requirement.   *   *   *

"*Mr. Hutchinson (for the State Bar):* All right, I would like to call Mr. Block.

"*The Chairman:* Mr. Block, would you raise your right hand.

(*Witness sworn.*)

"*Mr. Block:* I do, if they are proper questions. I may have some reservation as to some questions, but I will answer all questions fairly and impartially.

"*The Chairman:* You are making no reservation as to your oath, however?

"*Mr. Block:* I say this: There are some privileged communications between clients and myself, which I do not think I may be able to disclose unless there is a release from that confidential relationship.

"*The Chairman:* You have counsel representing you.

"*Mr. Block:* Yes, sir.

---

[3] The applicable disciplinary sections to which Mr. Dunn referred are those set forth in the appendix.

"*The Chairman:* And those matters can be taken care of as we proceed.

"*Mr. Block:* Yes, sir.

"*The Chairman:* So your oath is fairly and freely made?

"*Mr. Block:* Yes, sir."

Refer now to *Spevak's* complement, *Garrity* v. *New Jersey* (1967), 385 US 493 (87 S Ct 616, 17 L Ed 2d 562), handed down with *Spevack*. In that case it was shown that New Jersey's Attorney General, theretofore ordered by the Supreme Court of New Jersey so to do, proceeded to investigate certain reports of traffic ticket fixing by the appellant police officers; that in the course of such investigation the Attorney General obtained detailed statements from those officers; that the officers thereafter were prosecuted and convicted of conspiracies to obstruct the administration of the state's motor traffic laws; that portions of the statements so obtained were received in evidence during separate trials of the officers, and that the officers had duly raised question whether such use of the statements violated their constitutional right to remain silent.

By another five to four vote the Supreme Court ruled that the aforesaid officers, warned and threatened as the majority said was done before they submitted to the investigatory interrogations disclosed by their statements, were (as put by the majority) given the choice "either to forfeit their jobs or to incriminate themselves." Reversal of the convictions followed, upon this holding (p 500):

"We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."

Our task, highlighted as it is by the quoted counterstatement of question, is to determine whether there are any facts or permissible inferences in this record which tend to justify a conclusion or conclusions that this respondent was "warned," "coerced," "threatened," given "a choice between the rock and the whirlpool," subjected to "an unconstitutional inquisition," put "under duress," or "deprived of his 'free choice to admit, deny, or refuse to answer' "; all as developed by Mr. Justice Douglas for *Garrity's* majority. Presenting the issue this way, we purposely refrain from moving to distinguish *Garrity* on ground that the Supreme Court there reviewed criminal convictions, whereas we review here the loss of one's license to practice law. We believe all such slants and obliques, even if proper in today's context, should be cast aside in favor of a straightforward determination of the presented issue of unconstitutional coercion. Michigan needs such a determination. So does the respondent, considering our determination that his disbarment should be affirmed. The result then will be a reviewable Federal question.

We respond directly to the issue stated. There is no such fact or inference. Mr. Block took the oath voluntarily and answered all questions freely. He was not even "warned," as in *Garrity* (1) (2) and (3) on page 494, which indeed the grievance committee could have done—but did not—to fit its doings to that which subsequently-reported *Garrity* showed was done by New Jersey's Attorney General in the procurement of the officers' statements.[4] And no objection was made to any question, either by Mr.

---

[4] Section 29 of Rule 15 provides, with respect to the requirement that a respondent attorney present himself for cross-examination, that as a condition of discipline he must be "warned of the consequences" of refusal to testify. There was no such warning here; therefore no coercion as in *Garrity*.

Block or his counsel, as the interrogation continued through some 120 pages of testimony. Hence we view this cleaner and less doubtful record of voluntariness just as the Supreme Court of New Jersey viewed the *Garrity* record. See *State* v. *Naglee* (1965), 44 NJ 209, 220 (207 A2d 689, 695), and quotation thereof in Mr. Justice Harlan's dissenting opinion of *Garrity* (pp 502, 503).

There simply was no threat by the grievance committee, or anyone else acting for the State Bar, of loss by Mr. Block of his license to practice. Nor was the testimony given by him incriminatory, as in *Garrity*. It is not requisite, so far at least in our developing area of ultraism, that a lawyer be proved a criminal before he can be disbarred. It is requisite only that his conduct be that which proves clearly that he is unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney.

So far as Michigan is concerned, this Court long since has directed that the circuit court, when it determines and orders discipline of an attorney under Rule 15, should administer such discipline "as a measure necessary for the protection of the public, the courts and the legal profession, and not as punishment for wrongdoing." See § 16 of said Rule 15.

In the application of Rule 15 to this respondent we find no taint of unconstitutionality. The judgments below are therefore affirmed. Mr. Block need pay no costs or other exactions save as ordered by the circuit court.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, T. M. KAVANAGH, and ADAMS, JJ., concurred with BLACK, J.

T. G. KAVANAGH, J., did not sit in this case.

## APPENDIX

[State Bar Rule 15, headed "Discipline and
Reinstatement"—sections 9 & 29]

"*Sec. 9.*  Appearance; Answer; Formal Hearings.
It shall be the duty of the respondent to file answer
to the formal complaint. Such answer shall be in
writing and signed by the respondent, and shall be
filed with the committee, and a copy thereof served
on counsel for the State Bar of Michigan whose
name appears on the complaint, within 10 days after
service of the notice of hearing, unless further time
is allowed by the chairman of the committee upon
good cause shown. The answer shall conform, as
nearly as may be, with the requirements of the Mich-
igan court rules governing answers in civil causes.
If the answer is not filed within the time limited, and
no extension of time has been granted, the complaint
may be taken as confessed. It shall be the duty of
the respondent to appear in person before the griev-
ance committee at the formal hearing at the time and
place fixed in said notice, unless a different time is
fixed by the grievance committee. The respondent
may also be represented by counsel, who shall enter
a formal appearance. At such formal hearing it
shall be the duty of the respondent to present him-
self for cross-examination and to answer fully and
fairly, under oath, all questions pertaining to his
conduct that may be put to him by the chairman, or
any member of the grievance committee, or by coun-
sel for the State Bar of Michigan. Formal hearings
shall be conducted, as nearly as may be, in conform-
ity with trials of nonjury civil causes in circuit
courts."[5]

"*Sec. 29.*  Refusal to Appear or Answer. It shall
be the duty of the respondent in any matter of al-

---

[5] 343 Mich xlix.—Reporter.

leged misconduct, and of the petitioner in any matter of reinstatement, to present himself personally for cross-examination before the grievance committee when he is requested to do so by the chairman, and there to answer fully and fairly all pertinent questions having a material bearing upon the matters before the committee that may be put to him by the chairman or any member of the committee, or by counsel for the State Bar of Michigan. Any such respondent, or any such petitioner, who obstructs the inquiry by refusing to do so after he has been warned of the consequences, shall be subject to discipline or to denial of reinstatement, as the case may be, because of such refusal."[6]

[6] 369 Mich xxviii.—REPORTER.