STATE BAR GRIEVANCE ADMINISTRATOR v BAUN

Docket No. 56119. Argued May 6, 1975 (Calendar No. 3).—Decided
    September 8, 1975.

    A State Bar Grievance Board hearing panel found Leonard A.
    Baun guilty of misconduct in failing to maintain separate
    accounts for four estates and commingling estate funds with his
    personal funds, and suspended him from the practice of law for
    two years. The State Bar Grievance Board increased the pen-
    alty to disbarment. Respondent appeals. *Held:*

        1. The procedures under which the State Bar Grievance
    Board operates are not inherently biased. The functions of the
    State Bar Grievance Administrator, the hearing panel, and the
    State Bar Grievance Board in initiating and prosecuting the
    proceeding, initially adjudicating it, and reviewing it, respec-
    tively, are separate functions performed by different persons,
    who, absent a contrary showing, are presumed to be fair and
    honest. The procedure does not deny due process.

        2. The State Bar properly requested that respondent take the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law § 63.
[1, 3, 4] Suspension or revocation of medical or legal professional
    license as violating due process—federal cases. 9 L Ed 2d 851.
[2] 7 Am Jur 2d, Attorneys at Law § 12 *et seq.*
[3, 4] 7 Am Jur 2d, Attorneys at Law §§ 64, 68.
[5] 7 Am Jur 2d, Attorneys at Law § 67.
    Degree or quantum of proof necessary to justify disbarment or
    suspension of attorney. 105 ALR 984.
[6, 11, 12] 75 Am Jur 2d, Trial § 196.
    Prejudicial effect of prosecutor's calling as witness, to extract claim
    of self-incrimination privilege, one involved in offense with which
    accused is charged. 86 ALR2d 1443.
[7, 8] 75 Am Jur 2d, Trial § 192 *et seq.*
[8, 11, 12] 7 Am Jur 2d, Attorneys at Law § 194.
    Right of attorney to introduce evidence, and to cross-examine, in
    summary proceeding against him by, or in interest of, his client.
    141 ALR 655.
[9] 7 Am Jur 2d, Attorneys at Law § 68.
    75 Am Jur 2d, Trial §§ 235, 239, 242, 302.
[10, 13, 14] 58 Am Jur, Witnesses § 36 *et seq.*

stand under State Bar Rule 16, § 16.11, after it was advised that the respondent intended to claim his Fifth Amendment privilege. Respondent's right of refusal to answer questions on cross-examination extends only to those questions which might incriminate him, and he has no blanket right to refuse cross-examination on everything involved in the proceedings, including non-incriminating matters which bear on his fitness as an attorney. Requesting that respondent testify did not put undue emphasis on his taking the stand and invoking his right against self-incrimination, because the State Bar Grievance Administrator had the right to cross-examine him on non-incriminating matters.

3. The State Bar Grievance Board is obligated to give findings and reasons for extending the two-year suspension to disbarment, and did not do so. Therefore, the matter is remanded to the board so that it may set forth reasons in support of the order of discipline.

Levin, J., concurred in a separate opinion.

1. He agreed that the respondent in this case cannot predicate error on the ground that he was asked to take the stand because he himself made the hearing panel and Grievance Board aware of his exercise of the privilege in his answers to the request for investigation and the formal complaint, thus bringing it to their attention before and without regard to the request by counsel for the Grievance Administrator. However, he disagreed with the majority opinion that even if calling the respondent to testify was improper, it was harmless because the members of the hearing panel are experienced people who would draw no adverse inferences from his exercise of the privilege. There is no clear and undoubted view among lawyers and judges regarding the scope of the Fifth Amendment privilege and the consequence of its exercise in bar disciplinary proceedings, and we cannot rest comfortably in the notion that all lawyers serving on hearing panels will not draw an adverse inference from an attorney's claim of the privilege during a disciplinary hearing.

2. Unless counsel for the Grievance Administrator asserts and is able to demonstrate a valid purpose for calling a respondent who he knows will invoke the privilege, the general prohibition against calling upon an opponent in the presence of the trier of fact to waive a legal right is violated. In this case the hearing panel did not err in ruling that Baun was under no obligation to take the stand or answer any questions. Any

material question relevant to the inquiry then being conducted might have tended to incriminate him.

Remanded.

OPINION OF THE COURT

1. ATTORNEY AND CLIENT—STATE BAR—DISCIPLINARY PROCEEDINGS—DUE PROCESS.

The nexus between the State Bar Grievance Administrator, the hearing panel and the State Bar Grievance Board is sufficiently attenuated as to negate a contention by a lawyer subject to disciplinary proceedings that in effect the State Bar Grievance Board requested an investigation, investigated, determined probable cause, charged, prosecuted, and then found respondent guilty, thus denying him the due process of a fair hearing before an impartial tribunal.

2. ATTORNEY AND CLIENT—STATE BAR—DISCIPLINARY PROCEEDINGS—DUE PROCESS.

Absent a contrary showing, the State Bar Grievance Administrator, the hearing panel, and the State Bar Grievance Board, in addition to being functionally separate in disciplinary proceedings, are assumed to be fair and honest—composed of men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances; the risk of unfairness is not intolerably high.

3. ATTORNEY AND CLIENT—STATE BAR—DISCIPLINARY PROCEEDINGS—CROSS-EXAMINATION.

A lawyer's right of refusal to answer questions on cross-examination in grievance proceedings against him extends only to those questions which might incriminate him, and he has no blanket right to refuse cross-examination on everything involved in the proceedings, including his name, place of practice, date of admission to the bar and other non-incriminating matters (Grievance Board Rule 16.11).

4. ATTORNEY AND CLIENT—STATE BAR—DISCIPLINARY PROCEEDINGS—CROSS-EXAMINATION.

The State Bar Grievance Administrator has the right to cross-examine a lawyer in disciplinary proceedings concerning non-incriminating acts, words, and deeds which bear upon his fitness as an attorney (Grievance Board Rule 16.11).

5. ATTORNEY AND CLIENT—STATE BAR GRIEVANCE BOARD—INCREASED DISCIPLINE—EXPLANATION.

A grievance proceeding is remanded to the State Bar Grievance Board for the purpose of setting forth reasons in support of the order of discipline where the board, without explanation, in-

creased the penalty the hearing panel imposed, a two-year suspension, to disbarment.

CONCURRING OPINION

LEVIN, J.

6. TRIAL—WITNESSES—PRIVILEGE—SELF-INCRIMINATION—WAIVER.

*In both civil and criminal cases the general rule is that it is improper to challenge an opponent in the presence of the jury to waive a legal right and a new trial is required where a witness has been called for the purpose of eliciting a claim of privilege against incrimination.*

7. TRIAL—EVIDENTIARY PRIVILEGE—WAIVER.

*It is improper to call upon an adversary in the presence of the trier of fact to waive an evidentiary privilege.*

8. ATTORNEY AND CLIENT—ETHICS—STATE BAR GRIEVANCE ADMINIS-TRATOR—WITNESSES.

*A lawyer should neither ask a witness a question solely for the purpose of harassing or embarrassing him nor by subterfuge put before a jury matters which it cannot properly consider; these admonitions are binding on the State Bar Grievance Administrator and counsel appointed by him to conduct hearings on charges of unprofessional conduct against other lawyers.*

9. ATTORNEY AND CLIENT—DISCIPLINARY PROCEEDINGS—PRIVILEGE—SELF-INCRIMINATION—CONSTITUTIONAL LAW.

*The privilege against self-incrimination applies to a disciplinary proceeding against an attorney and comments concerning a respondent's silence are prohibited by the Federal and state Constitutions (US Const, Am V; Const 1963, art 1, § 17).*

10. ATTORNEY AND CLIENT—DISCIPLINARY PROCEEDINGS—PRIVILEGE—SELF-INCRIMINATION—ADVERSE INFERENCES.

*There is no clear and undoubted view among lawyers and judges regarding the scope of the Fifth Amendment privilege and the consequence of its exercise in bar disciplinary proceedings, and we cannot rest comfortably in the notion that all lawyers serving on hearing panels will not draw an adverse inference from an attorney's claim of the privilege during a disciplinary hearing.*

11. ATTORNEY AND CLIENT—DISCIPLINARY PROCEEDINGS—PRIVILEGE—SELF-INCRIMINATION—HARMLESS ERROR—PLEADING.

*No harm was done when counsel for the State Bar Grievance*

*Administrator in disciplinary proceedings challenged the respondent in the presence of the hearing panel to invoke the privilege against self-incrimination where the respondent expressly exercised the privilege in his answers to the request for investigation and formal complaint, thereby himself bringing to the attention of the hearing panel and the Grievance Board his claim of privilege before and without regard to the request at the hearing that he take the stand.*

12. ATTORNEY AND CLIENT—DISCIPLINARY PROCEEDINGS—WITNESSES—PRIVILEGE—SELF-INCRIMINATION.

*Unless counsel for the State Bar Grievance Administrator asserts and is able to demonstrate a valid purpose in disciplinary proceedings for calling a respondent who he knows will invoke the privilege against self-incrimination, the general prohibition against calling upon an opponent to waive a legal right is violated.*

13. CONSTITUTIONAL LAW—PRIVILEGE—SELF-INCRIMINATION—WITNESSES.

*To invoke the privilege against self-incrimination a witness must face a real and appreciable danger of incrimination but, while the court decides whether the privilege is properly invoked, it is the state of mind of the witness which determines whether the danger is real or imaginary.*

14. ATTORNEY AND CLIENT—PRIVILEGE—SELF-INCRIMINATION—DANGER—EMBEZZLEMENT—ESTATES.

*An attorney was under no obligation to take the witness stand in a disciplinary proceeding against him or answer any questions where the formal complaint charged that he was short in his accounts and failed to pay over to the successor fiduciary funds belonging to a number of different estates; any material question relevant to the inquiry then being conducted might have tended to incriminate him because he could have been charged with embezzlement.*

*Louis Rosenzweig,* for the State Bar Grievance Administrator.

*Watson, Wunsch & Keidan, P. C., Edward Dobreff* and *Robert J. Lord,* for respondent.

M. S. COLEMAN, J. Three viable questions are

presented by this appeal from a decision of the State Bar Grievance Board.

(1) Was appellant Baun denied due process in that the procedures under which the Bar Grievance Board operate are inherently biased?

(2) After having been advised that the respondent intended to claim his Fifth Amendment privilege, was it error for the State Bar to request that respondent take the stand under State Bar Rule 16, § 16.11?

(Conversely, the Bar Grievance Administrator has cross-appealed to inquire whether the Board erred when it ruled against any cross-examination under § 16.11.)[1]

(3) Did the Board err when it increased the hearing panel's penalty of a two-year suspension to disbarment?

Leonard A. Baun was disbarred[2] by the State Bar Grievance Board after a hearing panel had suspended his license to practice law for two

---

[1] State Bar Rule 16, § 16.11 provides:

"Respondent shall appear in person before the Hearing Panel at the time and place named by the Hearing Panel, and he shall be subject to cross-examination in like manner as an opposite party under CL 600.2161. * * * Pleadings and proceedings before a Hearing Panel shall conform as near as practicable with requirements of the General Court Rules for trials of non-jury civil causes in circuit courts, except as otherwise provided hereunder."

MCLA 600.2161; MSA 27A.2161 provides:

"In any suit or proceeding in any court in this state, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

[2] July 9, 1974.

years.[3] The hearings disclosed that Mr. Baun had failed to maintain separate accounts for four estates and had commingled those funds with his personal funds. He had eventually converted $147,-019.14 to his own use. He and his sureties repaid all funds which were so converted.

## I.

Attorney Baun submits that he was denied a fair hearing before an impartial tribunal. He contends that in effect the State Bar Grievance Board requested the investigation, investigated, determined probable cause, charged, prosecuted, and then found appellant guilty. The Grievance Board maintains that the nexus between the State Bar Grievance Administrator, the hearing panel and itself is sufficiently attenuated as to negate that contention. We agree with the Grievance Board.

In a recent case which is dispositive of this issue, *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975), involving the revocation of a medical license, the United States Supreme Court said:

"The initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation.

\* \* \*

"That the combination of investigative and adjudicatory functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high."

[3] April 23, 1974.

In the instant case, the State Bar Grievance Administrator found probable cause, prepared, filed and prosecuted the complaint. A hearing panel initially adjudicated the matter and then the State Bar Grievance Board reviewed it. The functions are separate. The people are different in each instance.

*Withrow* is clear. Absent a contrary showing, the hearing panel, the Grievance Board and the Grievance Administrator, in addition to being functionally separate, are assumed to be fair and honest—composed of "men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances". We have been presented with no special facts or circumstances which suggest that the risk of unfairness is "intolerably high" or that it even minimally exists.[4] We find no denials of due process.

## II

Attorney Baun also argues that the mere attempt by the State Bar to call him for cross-examination was prejudicial and violative of his right against self-incrimination. Before Mr. Baun was called for cross-examination, counsel to the State Bar Grievance Administrator had been informed that Baun would invoke his right against self-incrimination. Appellant contends that the only purpose in calling him to the stand was to emphasize that he was invoking his Fifth Amendment rights. This, contends appellant, is akin to a prosecutor arguing to a jury that it should draw an inference of guilt from a defendant's failure to testify.

[4] To the contrary, the most frequent complaint is that lawyers sitting in judgment upon lawyers are likely to be protective.

On the other hand, the Grievance Board contends that the question is not whether appellant can invoke his Fifth Amendment rights, but rather when can he invoke those rights. State Bar Rule 16, § 16.11 permits cross-examination. Respondent's right of refusal extends only to those questions which might incriminate him. The appellant has no blanket right to refuse cross-examination on everything involved in the proceedings, including his name, place of practice, date of admission to the bar and other non-incriminating matters.

We find *State Bar Grievance Administrator v Moes,* 389 Mich 258; 205 NW2d 428 (1973), coupled with *State Bar of Michigan v Block,* 383 Mich 384; 175 NW2d 769 (1970), to be controlling. The *Block* Court said:

"It is not requisite, so far at least in our developing area of ultraism, that a lawyer be proved a criminal before he can be disbarred. It is requisite only that his conduct be that which proves clearly that he is unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney.

"So far as Michigan is concerned, this Court long since has directed that the circuit court, when it determines and orders discipline of an attorney under Rule 15, should administer such discipline 'as a measure necessary for the protection of the public, the courts and the legal profession, and not as punishment for wrongdoing.' * * *

"In the application of Rule 15 to this respondent we find no taint of unconstitutionality."

The *Moes* Court added:

"Respondent misconceives the office of the Fifth

Amendment's privilege. The choice of whether to appear and to offer proofs lies with the one charged, but the obligation to meet charges never entails an obligation of self incrimination."

Here the appellant tried to invoke his Fifth Amendment rights in order to shed his obligation to meet charges and answer questions which could have been non-incriminating. True, if respondent were obliged to answer any and all questions asked, some of his utterances might have been incriminating. But the injection of that argument at this stage is inappropriate. The Administrator was precluded from asking any question at all.

Respondent's contention presupposes a blanket immunity from cross-examination. He claims prejudice because of alleged undue emphasis placed upon the mere taking of the stand and the invocation of his right against self-incrimination. But there was no undue influence. The State Bar Grievance Administrator had the right to cross-examine the appellant concerning non-incriminating acts, words and deeds which bore upon his fitness as an attorney to perform the duties and responsibilities entrusted to him.

The hearing panel and State Bar Grievance Board would be no more influenced by his failure to answer some of the questions while on the stand than by Mr. Baun's failure to take the stand. These are experienced people selected for their integrity, objectivity and intelligence. A considerable trust reposes in them and absent a specific showing to the contrary, we cannot find "undue influence" in requesting respondent to take the stand.

In this context, we must keep in mind the purpose of this proceeding, to wit: the ultimate

"protection of the public, the courts and the legal profession".[5]

It therefore follows that the board erred in denying all cross-examination of respondent.

### III

As to the administrator's cross-appeal, we find the error to his case harmless. Respondent was found guilty of the alleged offenses. However, this point of procedure may well be crucial in future matters.

### IV

Although the bar grievance procedure withstands the challenges herein, we have not been enlightened by the board as to the findings and reasoning which prompted the extension of the two-year suspension to disbarment. Therefore, pursuant to *State Bar Grievance Administrator v Gillette*, 393 Mich 26; 222 NW2d 513 (1974), we remand to the State Bar Grievance Board for the purpose of setting forth reasons in support of the order of discipline.

We retain jurisdiction.

T. G. Kavanagh, C. J., and Williams and J. W. Fitzgerald, JJ., concurred with M. S. Coleman, J.

Levin, J. *(concurring)*. During the grievance

---

[5] State Bar Rule 15, § 4 provides in part:

"Discipline for misconduct is not intended as punishment for wrongdoing but is for the protection of the public, the courts and the legal profession."

hearing, counsel to the Grievance Administrator called the respondent, Leonard A. Baun, for cross-examination. Baun declined to take the stand in exercise of his Fifth Amendment privilege. Baun. had previously made it known that he would exercise the privilege.

## I

In both civil and criminal cases the general rule is that it is improper to challenge "an opponent in the presence of the jury to waive a legal right".[1]

This principle has been held to require a new trial where a witness had been called for the purpose of eliciting a claim of privilege against incrimination.[2] The United States Supreme Court recognized this principle in a case where it concluded there was no reversible error.[3]

This Court has ruled it improper to call upon an

[1] 75 Am Jur 2d, Trial, § 193, p 276. *See, e.g., Shaneff v Sabo*, 251 Ind 229; 240 NE2d 820 (1968) (reversible error to permit jury to be present when plaintiff objected on the ground of privileged communication).

[2] *People v Pollock*, 21 NY2d 206; 287 NYS2d 49; 234 NE2d 223 (1967); *DeGesualdo v People*, 147 Colo 426; 364 P2d 374, 377 (1961).

[3] *Namet v United States*, 373 US 179; 83 S Ct 1151; 10 L Ed 2d 278 (1963). In *Namet* the Court did not reverse because the witness testified extensively prior to invoking the privilege and, in addition, the majority saw no evidence on the record of prosecutorial misconduct.

Justice Black, with Justice Douglas concurring, disagreed. Why, he questioned, would the prosecutor have asked questions he knew would go unanswered, unless he believed the refusals would help the state's case.

In *United States v Maloney*, 262 F2d 535, 537 (CA2, 1959), the Court declared:

"When a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused. *If the prosecution knows when it puts the question that he will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind.*" (Emphasis supplied.)

adversary in the presence of the trier of fact to waive an evidentiary privilege.[4]

The American Bar Association Standards for Criminal Justice provide that a lawyer should not "call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege".[5]

Ethical Consideration 7-25, accompanying the Code of Professional Responsibility, provides:

"[A] lawyer should not ask a witness a question solely for the purpose of harassing or embarrassing him; and a lawyer should not by subterfuge put before a jury matters which it cannot properly consider."[6]

---

[4] *McDuff v Detroit Evening Journal Co,* 84 Mich 1; 47 NW 671 (1890) (improper conduct for counsel to state in the jury's presence that if his opponent would withdraw his objection to a question counsel could then prove the matter in question); *Laird v Laird's Estate,* 127 Mich 24, 27–28; 86 NW 436 (1901) (reversible error for plaintiff to call decedent's wife and challenge defendant to waive the marital privilege); *People v Trine,* 164 Mich 1; 129 NW 3 (1910) (prejudicial error for prosecutor to call defendant's wife and thereby compel defendant in the presence of the jury to object to her testimony).

[5] American Bar Association, Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, 5.7(c); Standards Relating to the Defense Function, 7.6(c).

[6] American Bar Association, Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility, p 83. Similarly, the Code of Professional Responsibility provides that in his representation of a client a lawyer shall not "assert a position * * * or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another". DR 7-102(A)(1).

In *Carter v Hill,* 81 Mich 275; 45 NW 988 (1890), this Court stated that an intentional disregard of "well-understood and generally accepted rules of professional propriety" at trial might be a ground of reversal. *Similarly, see Wayne County Board of Road Commissioners v GLS LeasCo,* 394 Mich 126; 229 NW2d 797 (1975).

In *DeGesualdo v People, supra,* pp 432–433, where the district attorney called defendant's accomplice to the stand solely to elicit a claim of privilege, the Colorado Supreme Court stated:

"A district attorney, although in a sense a partisan, is a judicial officer sworn to uphold the constitution and obligated to refrain from invalid conduct creating an atmosphere prejudicial to the substantial rights of the defendant."

These admonitions are binding on the Grievance Administrator, who is required to be an attorney,[7] and counsel appointed by him[8] to conduct hearings on charges of unprofessional conduct'against other lawyers.

## II

My colleagues state that even if what occurred was improper, it was harmless because the members of the hearing panel are "experienced people selected for their integrity, objectivity and intelligence" who would draw no adverse inferences from Baun's exercise of his Fifth Amendment privilege.

Many aspects of the privilege remain unsettled.[9] Experienced people of the highest integrity, objec-

[7] Procedural and Administrative Rules of the State Bar Grievance Board, 16.4.

[8] Procedural and Administrative Rules of the State Bar Grievance Board, 16.5.1.

[9] For example, what constitutes waiver of the privilege in civil cases is unclear. *Compare Brown v United States,* 356 US 148; 78 S Ct 622; 2 L Ed 2d 589 (1958), *reh den* 356 US 948; 75 S Ct 776; 2 L Ed 2d 822 (1958); *McCarthy v Arndstein,* 266 US 34; 45 S Ct 16; 69 L Ed 158 (1924).

Also uncertain is the extent to which adverse inferences may be drawn in a civil case from the exercise of the privilege by a party.

This Court held in a civil case that a trial judge committed reversible error by commenting that the jury might be influenced by defendant's refusal to answer certain questions despite a ruling that no such inferences were to be drawn. *Carne v Litchfield,* 2 Mich 340 (1852). Other states have held that the court and jury may draw any adverse inference from a civil defendant's claim of privilege. Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis,* 39 Brooklyn L Rev 121, 145, fn 127 (1972).

The United States Supreme Court has limited the collateral consequences or penalties which may be imposed on one claiming the privilege. *Lefkowitz v Turley,* 414 US 70; 94 S Ct 316; 38 L Ed 2d 274 (1973) (state cannot force testimony of public contractors under threat of cancellation of present contracts and disqualification from entering future contracts); *Gardner v Broderick,* 392 US 273; 88 S Ct 1913; 20 L Ed 2d 1082 (1968); *Sanitation Men v Sanitation Commissioner,* 392

tivity and intelligence disagree as to its scope and the consequences of its exercise. Views regarding its applicability in attorney disciplinary proceedings are especially divergent.

The United States Supreme Court has held that a lawyer cannot be disbarred for refusing to testify in a disciplinary proceeding.[10]

In subsequent decisions a New York court has held that an attorney must produce potentially incriminating files in a disciplinary proceeding[11] and a California court has held that a hearing panel need not inform the witness of the right to refuse to testify.[12]

However, in *State Bar of Michigan v Woll,* 387 Mich 154, 165; 194 NW2d 835, 840 (1972), this Court set aside a three-month suspension ordered by the State Bar Grievance Board because counsel for the Grievance Administrator in his closing argument contended that the hearing panel should draw an adverse inference because of the attorney's exercise of the Fifth Amendment privilege. This Court said that the privilege against self-incrimination applies to a disciplinary proceeding and that comments concerning an accused's silence are prohibited by the Fifth Amendment and the Michigan Constitution (Const 1963, art 1, § 17).

US 280; 88 S Ct 1917; 20 L Ed 2d 1089 (1968); *Garrity v New Jersey,* 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967); *Slochower v Board of Higher Education,* 350 US 551; 76 S Ct 637; 100 L Ed 692 (1956) (public employees cannot be forced to choose between exercising a constitutional privilege and termination of employment).

However, *see* McCormick, Evidence (2d ed), § 121, p 260. Note, *Use of the Privilege Against Self-Incrimination in Civil Litigation,* 52 Va L Rev 322, 330–335 (1966).

[10] *Spevack v Klein,* 385 US 511; 87 S Ct 625; 17 L Ed 2d 574 (1967).

[11] *Kelly v Greason,* 23 NY2d 368; 296 NYS2d 937; 244 NE2d 456 (1968), distinguishing *Spevack v Klein, supra,* on the ground that the files in *Kelly* were "usable only in a disciplinary proceeding".

[12] *Black v State Bar of California,* 7 Cal 3d 676; 103 Cal Rptr 288; 499 P2d 968 (1972).

The Court rejected the contention that the error was harmless:

"While, as counsel for the State Bar points out, the Hearing Panel is made up of lawyers who should not be swayed by emotional arguments, the full Grievance Board does consist of two laymen who may not be familiar with the extent of the privilege against self-incrimination. Moreover, counsel for the State Bar did argue to the Hearing Panel that they should take defendant's failure to answer as evidence of his guilt, and he cannot now assert that because they were lawyers they must have known that he was making an improper argument and, thus, disregard it."

Having participated in numerous discussions with lawyers and judges, I know there is no clear and undoubted view regarding the scope of the Fifth Amendment privilege and the consequence of its exercise in bar disciplinary proceedings. We cannot rest comfortably in the notion that all lawyers serving on hearing panels will not draw an adverse inference from an attorney's claim of the privilege during a disciplinary hearing. "Too many, *even those who should be better advised,* view this privilege as a shelter for wrongdoers." *Ullmann v United States,* 350 US 422, 426; 76 S Ct 497; 100 L Ed 511 (1956).

## III

Nevertheless, I agree that respondent in this case cannot predicate error on this ground. He expressly exercised his Fifth Amendment privilege in his answers to the request for investigation and formal complaint, declining to answer the specific allegations against him "in reliance upon and preservation of his constitutional privilege against self-incrimination". His claim of privilege was

thereby brought to the attention of the hearing panel and the Grievance Board before and without regard to counsel's request at the hearing that he take the stand. Under the circumstance that the hearing panel and Grievance Board were made aware *by the respondent* himself of his exercise of the privilege, no harm was done when counsel for the Grievance Administrator challenged respondent in the presence of the hearing panel to invoke the privilege.

## IV

The United States Supreme Court in *McCarthy v Arndstein,* 266 US 34, 40; 45 S Ct 16, 17; 69 L Ed 158, 161 (1924), said:

"The Government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. *It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it."* (Emphasis supplied.)

This principle has been codified in the Revised Judicature Act:

"Any competent witness in a cause shall not be excused from answering a question relevant to the matter in issue, on the ground merely that the answer to such question may establish, or tend to establish, that such witness owes a debt, or is otherwise subject to a civil suit; *but this provision shall not be construed to require a witness to give any answer which will have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture,*

nor in any respect to vary or alter any other rule respecting the examination of witnesses." (Emphasis supplied.) MCLA 600.2154; MSA 27A.2154.

My colleagues say that respondent was obliged to submit himself to "cross-examination" on non-incriminating matters "including his name, place of practice, date of admission to the bar and other non-incriminating matters". Clearly, the issue is more fundamental than name, rank and serial number.

Baun was not called to the stand to put on the record his name, place of practice and date of admission to the bar; at that point in the proceedings, that information was superfluous. The only apparent purpose of calling him was to cause him to invoke the privilege. Unless counsel for the Grievance Administrator asserts and is able to demonstrate a valid purpose for calling a respondent who he knows will invoke the privilege, the general prohibition against calling upon an opponent to waive a legal right is violated.

## V

My colleagues state, "Respondent's contention presupposes a blanket immunity from cross-examination". But it is their opinion that proceeds on a presupposition: that there are necessarily non-incriminating matters in every case.

It is generally agreed that to invoke the privilege a witness must face a "real and appreciable" danger of incrimination.[13] While the court decides whether the privilege is properly invoked, it is the state of mind of the witness which determines whether the danger is "real" or "imaginary".

---

[13] McCormick, Evidence (2d ed), § 123, p 263.

"When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this statement of things, that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact." *United States v Burr,* 25 F Cas 38 (1807) (per Marshall, Circuit Justice, for the Court).

In this case, the formal complaint lodged one charge against Baun: upon revocation and termination of his appointment as a county public administrator he "was short in his accounts and failed to pay over to the successor fiduciary" funds belonging to a number of different estates. Baun could have been charged with embezzlement.[14] There was a "real and appreciable" danger that by his answers he might incriminate himself.

The possibility that an attorney facing disciplinary proceedings may be subject to criminal prose-

---

[14] MCLA 750.174; MSA 28.371 concerns embezzlement by an "agent, servant or employee or another, or as the trustee, bailee or custodian of the property of another". MCLA 750.175; MSA 28.372 concerns embezzlement by any person holding any public office in this state. MCLA 750.176; MSA 28.373 concerns embezzlement by any general or special administrator or any executor or guardian who has been appointed by a judge of probate. MCLA 750.181; MSA 28.378 concerns embezzlement by any agent, servant, employee, trustee, bailee, custodian, attorney-at-law, collector or other person.

cution is not unique in this case. A large proportion of the disciplinary charges brought by the Grievance Board concern allegations of fact which could form the basis of criminal prosecution.[15] In a number of cases lawyers have been charged with commingling funds and, accordingly, might have been charged with embezzlement.[16] Perhaps the most common charge, taking money and not completing work on time, might in particular circumstances support a charge of false pretenses or false representation.[17]

The privilege against self-incrimination "registers an important advance in the development of our liberty—'one of the great landmarks in man's struggle to make himself civilized' ". *Ullmann v United States, supra.*

The issues raised in this case can be resolved without erosion of the right to exercise the privilege against self-incrimination.

The hearing panel did not err in ruling that Baun was under no obligation to take the stand or answer any questions. Any material question relevant to the inquiry then being conducted might have tended to incriminate him.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.

---

[15] Of 29 disciplinary proceedings in which this Court published opinions from 1970 to date, criminal prosecutions might have been brought in approximately 17.

[16] *See, e.g., State Bar Grievance Administrator v Williams,* 394 Mich 5; 228 NW2d 222 (1975); *State Bar Grievance Administrator v Gillette,* 393 Mich 26; 222 NW2d 513 (1974); *State Bar Grievance Administrator v Estes,* 392 Mich 645; 221 NW2d 322 (1974); *State Bar of Michigan v Lavan,* 384 Mich 624; 186 NW2d 331 (1971); *Sternberg v State Bar of Michigan,* 384 Mich 588; 185 NW2d 395 (1971).

[17] MCLA 750.218; MSA 28.415. *See, e.g., State Bar Grievance Administrator v Albert,* 390 Mich 234; 212 NW2d 17 (1973); *State Bar Grievance Administrator v Moes,* 389 Mich 258; 205 NW2d 428 (1973); *State Bar Grievance Administrator v Freid,* 388 Mich 711; 202 NW2d 692 (1972); *State Bar of Michigan v Daggs,* 384 Mich 729; 187 NW2d 227 (1971).