In Re Ethics Complaint of
William KENNEDY,

v.

L.D., (C8–87–2361), B.D., (CX–87–2362), and A.D., Respondents (C7–88–238).

Nos. C8–87–2361, CX–87–2362
and C7–88–238.

Supreme Court of Minnesota.

Oct. 28, 1988.

Michael McGlennen, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Catherine E. Avina, Sp. Asst. Atty. Gen., Minneapolis, for respondents.

Heard, considered and decided by the court en banc.

PER CURIAM.

On November 20 and 24, 1987 and January 14, 1988 three different panels of the Lawyers Professional Responsibility Board (Board) summarily dismissed complaints which had been filed by petitioner, William Kennedy, against attorneys employed by the Office of Lawyers Professional Responsibility (Director's Office). Kennedy thereafter petitioned this court for review of the summary dismissals.[1] In his petition, Kennedy asked that this court reverse the dismissals, declare the Board policy invalid and establish a different policy for handling complaints against members of the Board and staff of the Director's Office. We find that the existing policy of the Board does not create an inherent conflict of interest and we affirm the summary dismissals made by panels of board members pursuant to the policy.

Rule 23 of the Rules of Lawyers Professional Responsibility gives the Board authority to "adopt rules and regulations * * * governing the conduct of business and performance of their duties." The policy challenged by petitioner in this case is one which was adopted by the Board on April 26, 1985 and provides in pertinent part:

> Complaints against the Director or his Assistants
>
> Upon receipt of such complaint, the Director will forward the complaint to the Chairman of the Board. The Chairman will submit the complaint to a Lawyers Board Panel appointed in rotation, which will determine whether the matter can be summarily dismissed. If the complaint cannot be dismissed, the Panel will submit the complaint to the Supreme Court

for assignment to special counsel for investigation. If special counsel determines the matter should be presented to a panel, it will be presented to a special panel as provided below.

> Complaints against Board Members
>
> The initial handling of complaints against Board Members will be handled within the normal channels of the discipline system. The Director will receive the complaint and determine whether it can be summarily dismissed. If it cannot, and it is of a routine nature and normally assigned to a District Ethics Committee for investigation, the Director will do so. If the District Ethics Committee recommends a dismissal and the Director agrees, he will do so. If the District Ethics Committee recommends further investigation or the District Ethics Committee recommends dismissal but the Director determines further investigation is necessary, the matter will be assigned to a special counsel for investigation, and if necessary, presentation of charges to a special panel.

Kennedy's argument is that the Board and the Director's Office are not separate entities and therefore, allowing Board members to initially review complaints against attorneys in the Director's Office creates an impermissible conflict of interest. The United States Supreme Court has held in a due process context that to successfully claim bias in an administrative adjudication one must "overcome a presumption of honesty and integrity in those serving as adjudicators" and show that the combination of investigative and adjudicative powers in the same individuals poses "a risk of actual bias or prejudgment." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Thus, analysis of Kennedy's argument requires examination of the structure and the operation of the lawyer disciplinary enforcement system in Minnesota and of possible bias on the part of individual Board

---

**1.** This court does not ordinarily review summary dismissals of ethical complaints. Minn.R. Law.Prof.Resp. 8(d) provides that summary dismissals are to be reviewed by a Board member appointed by the Chair. We accepted review in this case only to resolve the questions raised about the policy and to clarify the procedure for review of dismissals of complaints against staff of the Director's Office.

members who served on the reviewing panels.

The structure and operational policies of Minnesota's system for lawyer discipline are similar to those in other jurisdictions and comply with the ABA Standards for Lawyers Discipline and Disability Proceedings (Standards) adopted in 1979. According to those standards, the state's highest court has ultimate responsibility for the administration of the lawyers disciplinary system. Standards 2.1; *In Re Integration of Nebraska State Bar Association*, 133 Neb. 283, 275 N.W. 265 (1937). The ABA recommends that courts establish a single statewide disciplinary agency with clearly differentiated components for prosecution and adjudication. Standard 3.1. The agency should employ full-time disciplinary counsel to perform the prosecutorial functions and a Board made up of practicing attorneys and public members of the agency should handle adjudicative functions. Standard 3.2.

In Minnesota, the prosecutorial and adjudicative functions are separated even more clearly than is suggested by the ABA standards. The Board is divided into an Executive Committee, which has responsibility for the general supervision of the Director's Office, and panels, which conduct hearings to determine whether probable cause exists to petition the Court for disciplinary action. Minn.R.Law.Prof. Resp. 4(c), (d), (e) & 9(i)(1). To ensure that Board members do not have responsibility for both supervision of the Director's Office and adjudication of charges brought by the Director's Office, members of the Executive Committee are not allowed to sit on panels during their tenure as executive committee members. Furthermore, the Director is appointed by the court, not the Board. The Board does not have ultimate authority over the Director. Minn.R.Law. Prof.Resp. 5(a). With these provisions, the structure of the system for lawyer disciplinary enforcement in Minnesota exceeds the structural standards set out by the ABA and avoids creating any personal, professional or pecuniary conflicts of interest.

The operational policy adopted by the Board for handling complaints against Board members and Director's Office staff also complies with ABA standards. In fact, the Minnesota policy is nearly identical to Rule 17.J of the ABA Model Rules for Lawyers Disciplinary Enforcement which provides that complaints against members of the board should be submitted directly to the court and complaints against disciplinary counsel should be submitted directly to the board.

Kennedy proposed that all complaints against staff of the Director's Office or Board members be referred directly to this court or the court of appeals or a panel of district court judges. He represented to the court that such a policy "would be in accord with the policies established in other jurisdictions" and in support of such representation quoted portions of court rules from Pennsylvania, Rhode Island and Tennessee. However, the cited rules, when read in their entirety, are exactly the same as the existing policy which he challenged. Rule 209(b), Pennsylvania Rules on Disciplinary Enforcement provides:

> Complaints against members of the Board involving alleged violations of the Disciplinary Rules shall be submitted directly to the Supreme Court. Complaints against Disciplinary Counsel involving alleged violations of the Disciplinary Rules shall be submitted directly to the Board and assigned to a reviewing member for disposition.

The Rhode Island Court Rules Annotated contain an almost identical provision except that they refer to the Code of Professional Responsibility rather than Disciplinary Rules and to "counsel" rather than "disciplinary counsel". *See* Rule 42–7, Rhode Island Court Rules Annotated. Similarly, Rule 9, Section 9 Tennessee Supreme Court Rules on Disciplinary Enforcement provides:

> Complaints against members of the Board involving violations of the Attorney's Oath of Office, the Code of Professional Responsibility or TCA § 23–3–201 shall be submitted directly to the Supreme Court. Complaints against hearing committee members or Disciplinary

Counsel alleging violations of the attorney's oath or the code of professional responsibility shall be submitted directly to the Board.

Kennedy also cited the South Carolina Rules on Disciplinary Procedure as being the same as the policy he recommended. He neglected to mention that because South Carolina has only a statewide board and no office of disciplinary counsel, there is no need for a rule dealing with complaints against disciplinary counsel. We were unable to find any state which has a policy similar to the one Mr. Kennedy recommends.[2]

We are not persuaded by Mr. Kennedy's arguments that the Board and the Director's Office are not the "separate and independent entities they claim to be" and that the policy allows the Board and the Director's Office to judge their own actions. The policy simply shifts the initial investigative responsibility from the Director's Office to a hearing panel when the complaint is about an attorney who works for the Director's Office. If the panel determines that investigation is warranted, special counsel is appointed to conduct the investigation and a specially appointed panel makes the probable cause determination. Thus, the investigative and adjudicative functions remain clearly separated. Accordingly, we find that the separation of the two components of the disciplinary system provided for in both the Minn.R.Law. Prof.Resp. and the Board policy for handling complaints against Director's Office staff sufficiently prevents any risk of inherent bias.

Having determined that there is no inherent bias in the structure of the disciplinary enforcement system or the policy in question, we must decide whether there is evidence of any bias on the part of the individual members of the panels which reviewed the complaints. The Michigan Supreme Court, following the *Withrow* reasoning in an attorney discipline case held:

Absent a contrary showing, the hearing panel, the Grievance Board and the Grievance Administrator, in addition to being functionally separate, are assumed to be fair and honest—composed of "men of conscience of intellectual discipline, capable of judging a particular controversey fairly on the basis of its own circumstances."

*In Re Baun*, 395 Mich. 28, 232 N.W.2d 621, 623–624 (1975) (quoting *Withrow*).

■ Bias on the part of an adjudicator has been found to be constitutionally intolerable in only a few cases—where the decisionmaker has a pecuniary interest in the outcome of the decision. *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973), or where the decisionmaker has become embroiled in a personal dispute with the party appearing before him or her, *Taylor v. Hayes*, 418 U.S. 488, 501–503, 94 S.Ct. 2697, 2704–2705, 41 L.Ed.2d 897 (1974). Other standards for examining conflict of interest or bias are also useful in reviewing the claims of bias presented here. For example, judges may be removed from a case where there is an "affirmative showing of prejudice." Minn. R.Civ.P. 63.03. It is improper for prosecutors to participate in cases which involve personal friends or relatives, *State v. Bell*, 84 Idaho 153, 370 P.2d 508, 511 (1962); where the defendant is a current or former employee of the prosecutor's office, *In Re Davis*, 471 N.E.2d 280, 281 (Ind.1984); or where the prosecutor has a personal interest adverse to the prosecution, *State v. Melerine*, 236 La. 881, 109 So.2d 454, 458 (1959).

■ Kennedy has presented no basis for disqualification. He simply alleges that there may be a conflict. Absent a showing of actual bias on the part of a panel member, we must presume that the panel members acted honestly and with integrity in their roles as decisionmakers. *Withrow*, 421 U.S. at 47, 95 S.Ct. at 1464.

■ Summary dismissals are not ordinarily reviewable by this court. Minn.R. Law.Prof.Resp. 8(c) sets forth the options available to the Director for disposition of

**2.** It should be noted that procedures and policies of a disciplinary enforcement agency are sometimes not published because they are internal rules of the agency.

complaints. Rule 8(d) provides that when a complainant is not satisfied with the Director's disposition, s/he may appeal the decision by writing to the Director within 14 days. A Board member appointed by the Chair then reviews the Director's disposition and may affirm it, direct that the matter be submitted to a panel or direct further investigation. In the three cases under consideration here, the only difference is that a panel rather than the Director made the the initial disposition decision. Before the Board decided and informed Kennedy that he could appeal the decision under Rule 8(d), Kennedy petitioned this court for review of the decision under Rule 9($l$), which provides for review of panel dispositions after a hearing has been conducted. We accepted review of these cases because at the time he petitioned, Kennedy was apparently not aware of the appropriate means for appealing the decision. We note, however, that because no hearing is conducted before a summary dismissal decision is made, Rule 9($l$) is not the appropriate provision for obtaining review and this court in the future will decline to review summary dismissals.

We have reviewed all of the information which the three panels had available to them and see no purpose in prolonging any further the final disposition of the three complaints involved. Based upon our review, we are convinced that the panels' decisions to summarily dismiss these cases were proper in all respects.

A complaint should be investigated if there is "a reasonable belief that professional misconduct may have occurred." Minn.R.Law.Prof.Resp. 8(a). The Board has adopted and published guidelines which the Director's Office follows when making summary dismissal determinations. *See* Wernz, "Summary Dismissal Guidelines," 44 *Bench and Bar of Minnesota*, No. 5 (1987). The guidelines provide that "[i]f a complaint makes allegations which if true, would not state a violation of the Minnesota Rules of Professional Conduct, the complaint will ordinarily be summarily dismissed." The guidelines also specifically identify the types of commonly received complaints which the Director's Office does

not ordinarily investigate: fee disputes, malpractice complaints, non-payment of professionally incurred indebtedness, complaints about advertising and written solicitation which do not involve false or misleading statements, misconduct in non-attorney situations and allegations that a prosecutor improperly charged or failed to charge.

■ Kennedy's complaint against B.D. stemmed from B.D.'s involvement in the investigation of a complaint filed against Kennedy in August 1986. The complaint against Kennedy was one of several complaints against attorneys all arising from three parental kidnapping cases in Hennepin County. The Director's Office investigation of the complaint was delayed for approximately 10 months due to another investigation of the same matters. Once the other investigation was completed, the Director's Office resumed its investigation and B.D. sent Kennedy a letter requesting that he answer three questions regarding the allegations in the complaint. Kennedy objected to the questions. Rather than filing a motion to challenge the reasonableness of the request for information in Ramsey County District Court pursuant to Minn.R.Law.Prof.Resp. 25(a), Kennedy filed an ethical complaint against B.D. and did not respond to the questions.

B.D. responded to the complaint by explaining the reasons for the delay in the investigation and the need for answers to the questions he sent to Kennedy. The Director's Office had originally told Kennedy no written response would be required because it had already received volumes of information about the matter with Kennedy's complaint against several other attorneys. After the Director's Office had resumed its investigation, it was determined that some additional information was needed. We find that explanation and all three questions to be reasonable.

■ The second case involves Kennedy's allegation that L.D. used improper language in a memorandum accompanying a discipline-not-warranted notice which L.D. sent to one of Kennedy's assistants after a

District Ethics Committee (DEC) investigation. The sentence to which Kennedy objected indicated that the DEC investigator did not agree with the committee's conclusion that no discipline was warranted. In a response to the complaint, L.D. explained that the primary purpose of such a memorandum is to explain the basis for the committee's decision. Accordingly, the memorandum must provide enough detail to help complainants and reviewing board members understand the decision. The sentence in the memorandum to which Kennedy objects simply informs the respondent attorney that the investigator did not agree with the Committee's decision. The inclusion of that sentence by L.D. does not constitute a violation of the Minn.R.Prof. Cond. Furthermore, it should be noted that neither the notice nor the memorandum are public documents and the respondent attorney maintains complete control over who will ever see that sentence.

■ The third case involves a complaint received by the Director's Office in December 1987 in which Kennedy alleged that A.D. referred a complaint against an assistant public defender to a District Ethics Committee without justification. In October 1987, the Director's Office had received the complaint about the assistant public defender from a judge and A.D. assigned the complaint to a district ethics committee for investigation. A.D. responded to Kennedy's complaint by citing the rules of professional conduct which A.D. believed may have been violated by the assistant public defender. The panel which reviewed the Kennedy complaint against A.D. specifically stated in its decision to dismiss that A.D.'s referral of the complaint to a District Ethics Committee was the proper exercise of prosecutorial discretion. We agree and note that the panel's decision follows the summary dismissal guidelines adopted by the Board which provide that complaints alleging that a prosecutor improperly charged or failed to charge are routinely dismissed.

We agree with all three of the panels that even if the allegations in Mr. Kennedy's complaints were true, no rules would have been violated. We therefore affirm the decisions of the three panels and dismiss all three of Mr. Kennedy's complaints.

POPOVICH, Judge (concurring in part, dissenting in part).

I concur in that portion of the opinion that disposes of the conflict of interest policy issue, but dissent from that portion (p. 837, et seq.) that disposes of the complaints against B.D., L.D. and A.D. on the merits.

Kennedy filed petitions for review of dismissals under Rule 9(*l*), Rules on Lawyers Professional Responsibility (RLPR). This was premature, for his right to review was to proceed pursuant to Rule 8(d), RLPR. Kennedy did not argue the merits of the complaints in his brief or at oral argument. His reply brief specifically stated he was not seeking review of the dismissal nor waiving his right to it. It appears Kennedy petitioned for review of these three cases primarily to draw the court's attention to the policy regarding conflicts with which he disagrees.

I would remand these three dismissals to the Board for further proceedings under Rule 8(d) if Kennedy is not satisfied with the disposition of each. This rule specifically provides that further investigation could be directed to be undertaken, and Kennedy on remand should have the opportunity provided by the rule if he chooses.

I recognize that the court has the authority to decide these three dismissals on the merits, but I would prefer a remand as the better practice since the resort to this court was premature and for a limited purpose.